Clifton M. Warner, Appellee, v. Winifred W. Rogers, Trustee of the Last Will and Testament of Clifton H. Moore, Deceased, Appellant.

Gen. No. 8,283.

80

Opinion filed October 23, 1929.

HERRICK & HERRICK, for appellant.

FRANK K. LEMON and LOUIS O. WILLIAMS, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Clifton M. Warner, appellee, one of the trustees appointed by the circuit court of DeWitt county under the last will and testament of Clifton H. Moore, deceased, filed a report of his acts as "managing" trustee in said court for the year 1926. This report purports to be presented on behalf of all of the trustees, to wit, Clifton M. Warner, John Warner, Winifred W. Rogers and Frances W. Crist, but is sworn to only by appellee who makes his affidavit in the capacity of "managing" trustee of the estate. Winifred W. Rogers, one of the cotrustees and appellant, did not in fact sign said report but on the contrary filed 279 objections thereto all of which upon a very full hearing thereon were overruled by the chancellor and the report approved. This appeal is brought to reverse the decree overruling said objections and approving the report.

Clifton H. Moore died testate in April, 1901. By the terms of his will, Vespasian Warner and Arthur Moore were appointed executors thereof and also testamentary trustees. Arthur Moore died in November, 1901, and Vespasian Warner, the surviving trustee, continued to execute the trust until March 31, 1925, at which time he also died. After providing for certain small legacies and annuities to other persons, the testator bequeathed the income from the bulk of his estate to the four surviving grandchildren of Vespasian Warner, deceased, to wit, John Warner, Clifton M. Warner, Frances Warner Crist and Winifred Warner Rogers, heretofore mentioned. By the will it is further provided that 21 years after the death of the survivor of the life tenants, all the real estate is to be sold and all the trust property divided *per stirpes* among the then heirs of said Clifton H. Moore. While a small portion of the real estate in the trust consisted of a few city lots, by far the greatest portion thereof was represented by farm lands, of which there were 14,401 acres in Illinois, 5,516 acres in Iowa, 12,700 acres in Kansas, 680 in Missouri and 2,640 in Nebraska. These agricultural lands represented several hundred farms most of which were rented on a crop-share basis with cash rent for pasture lands.

After the death of Vespasian Warner, the surviving trustees appointed by the will, Clifton M. Warner, appellee, and John Warner filed a bill for the appointment of trustees. While this bill was pending the said four grandchildren of the testator and the *cestuis que trustent* under the will, including appellant and appellee, entered into a written stipulation or agreement wherein it is provided that all four of them should be appointed temporary trustees of the trust estate by the court pending the appointment of permanent trustees and that appellee "shall be the active managing trustee and shall have direct charge of and control

over the property which is the corpus of said trust, subject to the order and direction of his cotrustees, and also the order and direction of said circuit court." The agreement further provided that appellee as such managing trustee shall cause to be kept full and accurate records and accounts of all transactions of the trust business and that the same shall be open to inspection of any of the trustees at any reasonable time during business hours. The stipulation also contains provisions in regard to the compensation of appellee as such managing trustee and several other provisions not necessary to mention. The sixth and eighth clauses, however, are important and are as follows: "6. That the office expense, salaries and employes and all reasonable and necessary expense of operating said trust estate shall be paid by the said Clifton M. Warner, as such managing trustee, subject to the consent of his cotrustees, from the funds accruing in said trust estate; and it is expressly stipulated and agreed that the said Clifton M. Warner is not to be held personally liable or responsible for any necessary expense of operating or managing said trust estate; provided further that at the request of any trustee the said circuit court shall fix the amount of office expenses and like expenses to be incurred by the manager; and that the amount to be expended for repairs and improvements, except repairs of a small, temporary and urgent nature, shall be agreed upon before being incurred by the said trustees, and in the event of disagreement the matter may be submitted on the petition of any trustee to said circuit court for its determination with the right of appeal to any party." "8. The trustees shall mutually consult with each other and endeavor to work in peace and harmony; any trustee shall be at liberty at any time to apply to said circuit court for guidance and instruction, or the determination of any business policy connected with said trust estate or the manage-

ment or operation thereof." After this stipulation was entered into, the bill filed by John and Clifton Warner for the appointment of trustees was amended and the stipulation above referred to set out therein, and thereupon the court entered a decree appointing the said four *cestuis que trustent* trustees, and appellee as managing trustee, and embraces substantially all the terms and conditions of the stipulation. This decree was entered at the May term 1925 of said court.

After the entrance of this decree appellee, as managing trustee, assumed to manage the estate, collected the income and profits thereof, made numerous repairs and improvements thereon, and after deducting the expenses of the administration and the repairs, paid to the parties entitled thereto their respective shares of the net income. None of the *cestuis que trustent* object to the report of appellee except appellant and her objection thereto is solely upon the ground that she as a cotrustee never gave her consent to any of the repairs made by appellee nor were they authorized by the court, therefore they were unauthorized and her share of the income as a *cestui que trust* has been diminished. She bases her contention upon that rule in the law of trusts that in the case of cotrustees, the office is a joint one, and where the administration of a trust is vested in cotrustees, that all form, as it were, but one collective trustee, and therefore must execute the duties of the office in their joint capacity. If any cotrustee refuse or be incapable to join, it is not competent for the others to proceed without him, but the administration of the trust must in that case devolve upon the court. *Coleman v. Connolly,* 242 Ill. 574; *Dingman v. Boyle,* 285 Ill. 144; *Pennsylvania Co. v. Bauerle,* 143 Ill. 459; *Anonymous v. Gelpcke* (N. Y.), 5 Hun. 245; *Donovan v. Miller,* 137 Md. 555, 112 Atl. 926; *Sinclair v. Jackson,* 8 Cowan 543; Lewin on Trusts, 258–259; Perry on Trusts, sec. 411; Hill on

Trusts, 305; *Busse v. Schenck* (N. Y.), 12 Daly's Rep. 12.

We concede that the above rule is a basic principle in equity but the difficulty in the case at bar is the application thereof to the facts as they appear in the record.

We are first confronted with the unusual situation of the trustees themselves being also the *cestuis que trustent*. In other words they are the trustees of the estate for the use of themselves and thus maintain a dual capacity. The stipulation executed by the parties was entered into in their capacity as *cestuis que trustent* and the decree that was subsequently entered embodying the terms of the stipulation was by their consent as *cestuis que trustent*. That a *cestui que trust*, who is *sui juris*, has a general control over his share of the income derived from the trust, can approve of the acts of the trustee or trustees, or by his own acts estop himself from disapproving the same, cannot be doubted. The *cestuis que trustent* in this case, including appellee, had the right as such, to enter into the stipulation or agreement between themselves above mentioned as to the general management of the estate and are bound by the decree entered by their consent embodying such agreement.

Appellant does not claim that appellee was guilty of any fraud in the management of the property nor that any of the repairs or improvements made by him on the various properties were not necessary and essential for the preservation of the corpus of the trust estate, but rests her objections solely on the grounds that appellee neither obtained her consent to them nor procured orders from the court permitting them. Appellant resided at Newport, Rhode Island, and during the time most of these improvements were made, she was in Europe traveling from place to place making it impossible for appellee to consult with her. She went to Europe in May, 1926, and did not return until

November of that year. Mrs. Crist lived in California, and John Warner at Clinton, Illinois. Appellee frequently consulted with his cotrustee, John Warner, who gave his consent to all the improvements made. Mrs. Crist filed no objections to the report, and it will be presumed from her silence that she approves of the same. On June 6, 1925, appellant executed under seal and acknowledged the following power of attorney which was duly recorded in the recorder's office of DeWitt county:

"Know All Men by These Presents, That I, Winifred W. Rogers of the City of Clinton, DeWitt County, Illinois, temporarily residing at the City of Newport in the State of Rhode Island, have made, constituted and appointed, and by these presents do make, constitute and appoint Lott R. Herrick of the City of Farmer City in the County of DeWitt and State of Illinois, my true and lawful attorney, for me, and in my name, place and stead to ask, demand, due for, collect, receive and give receipts, and full acquittance and discharge for all moneys, debts, demands of any kind, or other property of any character, now due me or which shall become due, owing or belonging to me from the Trust Estate created under and by virtue of the last Will and Testament of Clifton H. Moore, deceased, or from the estate of my father, Vespasian Warner, who is now deceased; also to enter my personal appearance in any suit at law, or in equity, or special statutory action, in any court, when the same concerns said Trust Estate or the Estate of my said father, or any part thereof; and to accept for me, as fully as I could at the doing thereof, any notice or notices arising out of, or concerning any such suit at law, or in equity or special statutory action; to enter into and to carry to conclusion any stipulations, agreements, or understanding whatsoever with the trustees, or managing trustee, of said trust estate, or with the executors of the last Will and Testament of said Vespasian

Warner, deceased, concerning, or in any wise apper-
taining to said Trust Estate, or to the Estate or the
last Will and Testament of said Vespasian Warner,
deceased, and, for that purpose, to enter into and upon
contracts or agreements, by parol or in writing, of
any nature or kind whatsoever; and to execute any and
all instruments of writing under seal, or deeds, includ-
ing the execution, acknowledgment and delivery of the
same, so long as the same is pertaining to said trust
estate or to the estate, or last Will and Testament of
said Vespasian Warner, deceased; giving and grant-
ing unto my said attorney full power and authority to
do and perform all and every act and thing whatso-
ever requisite and necessary to be done in and about
the premises, as fully, to all intents and purposes, as I
might or could do if personally present at the doing
thereof, with full power of substitution and revoca-
tion, hereby ratifying and confirming all that my said
Attorney, or his substitute shall lawfully do or cause
to be done by virtue hereof.

"In Testimony Whereof, I have hereunto set my
hand and seal this 6th day of June, A. D. 1925.

(SEAL)                    WINIFRED W. ROGERS."

Before she departed for Europe, appellee attempted
to obtain her consent to many of the repairs that were
made and she repeatedly told him to consult her at-
torney in fact in regard to such matters and obtain
his consent thereto. The evidence further shows that
she visited a number of the properties in the vicinity
of Clinton in company with appellee and when he
pointed out and suggested the repairs necessary to
be made on such properties she neither consented nor
refused to consent to the same.

By the terms of the stipulation and the decree of
the court, appellee had authority from appellant to
make such repairs and improvements as were of a
small, temporary and urgent nature. A great many
of the items objected to certainly came within the

definition of small and urgent, and the evidence conclusively shows, there being none to the contrary, that all the repairs and improvements made were urgent and necessary to the preservation of the different properties on which they were made. These facts are conceded. In some instances the amounts expended in repairs exceeded the incomes derived from the properties on which they were made. It is a matter of common knowledge that for a number of years incomes from agricultural pursuits have not kept pace with those of the majority of other industries and some of the amounts necessary to be expended for the preservation of such properties may seem to have been disproportionate to the respective incomes derived therefrom. Yet, substantially all the repairs made were of a permanent character which necessarily enhanced the value of the particular property on which they were made and which were necessary to preserve its usefulness, and eventually the beneficiaries will derive a larger profit therefrom on account thereof.

The trustees owed a duty to the remaindermen to so manage the trust estate as to prevent waste. Also, in different places in the will of the testator, the following provisions appear:

"All my other and improved lands and lots in Illinois and Iowa my Executors are to use themselves or rent as best they can for my Estate and after paying taxes and improvements the sum remaining is to be equally divided yearly and paid along as the same comes in equally to my son Arthur Moore and to my daughter Winifred Moore Warner subject to the legacies and annuities hereinbefore named."

"And I request my son and my son-in-law, my Executors to continue the management of my Estate in about the manner it is now done with any improvements they may make in handling the same."

"And my desire is that they will be kind and fair with all their tenants, not using their power to injure

tenants, only when it is necessary to get rid of a bad one, and keep the farms up and improvements in good order.''

It was clearly the intention of the testator to impose upon his executors and trustees the duty of keeping the farms in proper repair and as he expresses it, ''keep the farms up and improvements in good order.'' It has been held that where a trustee has incurred expenses which the court can clearly and satisfactorily see were necessary, he will be allowed them in the same manner as if leave had been granted on petitions before incurring them. *Hatton v. Weems* (Md.), 12 Gill. & J. 83; *Williams v. Smith,* 10 R. I. 280; *Brandon v. Brandon* (N. Y.), 50 Howard Prac. 328.

Appellee refused to recognize the power of attorney executed by appellant in which she attempted to transfer to an attorney all her duties as trustee. A trustee in whom is vested discretionary powers involving personal confidence can not delegate his powers and duties and shift his responsibility to other persons by contract or otherwise. *Chicago Title and Trust Co. v. Zinser,* 264 Ill. 31, 35; *Spengler v. Kuhn,* 212 Ill. 186; *Binns v. LaForge,* 191 Ill. 598; *Taylor v. Hopkins,* 40 Ill. 442.

The only persons interested in the income of the estate were appellant, appellee, Mrs. Crist and John Warner in so far as it is involved in this controversy. These parties were cotrustees and also *cestuis que trustent.* Having such a dual capacity, they had a right to agree among themselves that appellee should manage the estate upon the conditions imposed in the stipulation. The law imposed upon them as trustees to make such repairs and improvements as were necessary to preserve the estate. The will of Clifton H. Moore, deceased, specifically directed that they should make such improvements and repairs. The court below found that the repairs and improvements made by appellee as managing trustee were essential and neces-

sary for the preservation of the corpus of the estate. It is true that under the stipulation it was the duty of appellee before making such repairs and improvements which were not of a small, temporary and urgent nature, when he was unable to procure the consent of appellant thereto, to have first obtained an order of the court for leave to do so but the fact that the court approved the report, conclusively shows that if such leave had been requested, it would have been granted and under the facts as they specifically appear in this particular case, we do not believe that in equity and good conscience appellee should be penalized for not having done so.

The decree of the circuit court is affirmed.

*Affirmed.*