ANNA MARIE DAVID *et al.*, Minors, by Michael Nicoletti, their Next Friend, Plaintiffs-Appellees and Cross-Appellants, *v.* JOHN A. RUSSO *et al.*, Defendants-Appellants and Cross-Appellees.

First District (4th Division)   Nos. 79-808, 79-1098 cons.

Opinion filed December 18, 1980.

Richard J. Belmonte and Scott B. Zolke, both of Belmonte, Kagan, Hibbler & DePalma, of Chicago, for appellants.

Leonard Rubin, of Chicago, for appellees.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendants, John and Mary Russo, were deeded legal title to a residence located at 1102 Meadow Land, Mount Prospect, Illinois, on July 25, 1967. The plaintiffs, Anna Marie David and Paula David, minors, by their next friend, Michael Nicoletti, contend the property is held by the Russos as constructive trustees for the plaintiffs. The trial court found that a partnership existed and ordered that the property be sold and the net proceeds split between the plaintiffs and the defendants. Defendants appeal from that judgment. Plaintiffs cross-appeal, contending the 50-percent distribution to defendants is unfair. We find for the Davids on their cross-appeal.

The Russos contend on appeal that (1) the complaint praying for the establishment of a constructive trust is not sufficient as a matter of law; (2) the equitable relief sought by the Davids is barred by the doctrine of laches and the statute of limitations; (3) the amended complaint filed by the Davids is not sufficient in scope to conform to the findings of the trial judge; (4) the equitable relief sought by the plaintiffs is barred by the doctrine of unclean hands; (5) plaintiffs did not meet their burden of proof; and (6) the judgment entered was tainted because of collusion between the trial judge and plaintiffs' counsel.

A brief statement of the property ownership is necessary for an understanding of the case. Raymond Kopecky and Helen Kopecky, his wife, transferred title to the property in question to Max Sorba and Phyllis Sorba, his wife, by warranty deed in 1965. However, Ronald Brunetti and his family lived on the premises and made the payments on the mortgage. Apparently, the Sorbas only held the legal title to the property as an accommodation to the Brunetti family. On July 13, 1966, the Sorbas conveyed the property to Edward and Nancy DiVita, who were legally known as Edward and Nancy David, the daughter and son-in-law of Ronald Brunetti. Ronald Brunetti and his family continued to live on the premises with the Davids and continued to make the mortgage payments.

In 1967, Ronald Brunetti defaulted on his payments to Franklin Savings and Loan Association. Quit-claim deeds were executed on March 10, 1967, by Ronald and Anna Marie Brunetti and, also, by Edward and Nancy David to Clara C. Pfeiffer, a nominee, in lieu of foreclosure. Ronald Brunetti died a few weeks later. The nominee then transferred the property to the mortgagee, Franklin Savings and Loan Association, who, on July 25, 1967, transferred the property to defendants. The facts

surrounding the transfer of the property to defendants are in dispute and form the central issue in this appeal. Nancy David died on March 1, 1972, and Edward David died in April 1977. Shortly after Edward David's death, the property was placed in a land trust by defendants. The defendants filed an action seeking an eviction of the plaintiffs, the children of Edward and Nancy David. According to defendants, the forcible detainer action is still pending in the circuit court. After the filing of the eviction suit, plaintiffs filed this action.

At trial, Sheila Brunetti testified that shortly after the death of Ronald Brunetti, her father-in-law, she and her husband called John and Mary Russo, who were old family friends. The Brunettis and Nancy David went to the Russo home. The witness stated that several conversations occurred between the Russos and the Davids. At the first conversation, her husband, Arthur Brunetti, asked the Russos to sign a mortgage on behalf of Edward and Nancy David to enable the Davids to stay in the house. The Russos agreed to take title to the property on their behalf as long as the Davids made the payments to the Russos and agreed to reimburse them for all out-of-pocket expenses. The Russos also asked Edward David to do the carpentry on other properties owned by the Russos. Subsequent conversations resulted in confirmation of the agreement.

Mary Russo's testimony amounted to a complete denial that the foregoing conversations occurred. She stated the Davids occupied the house as tenants of the Russos and any payments made by the Davids were for rent. The witness further testified that she and her husband, alone, always made the mortgage payments and paid the taxes, even though the Davids did not make all their rental payments. Mary Russo claimed she and her husband had made mortgage and tax payments on the property since the purchase.

Norman Schaper, an insurance agent, testified that the insurance policy for the property was bought, paid for, and delivered to the Davids. In her testimony, Mary Russo stated that she and her husband purchased the insurance for the property.

Anna Marie Brunetti, Nancy David's mother, testified that she delivered a mortgage payment to Mary Russo on behalf of the Davids. She also stated that Edward David did carpentry for the Russos.

Arthur Brunetti testified to several improvements made on the property by Edward David, some of which were the construction of a family room, bookshelves, an altered bathroom, a large concrete patio, a brick barbeque and a wishing well. The Russos stated they paid for some of the improvements made on the property.

Kenneth Scranton, a practicing attorney, testified that in July 1967 he represented First Federal Savings regarding the subject property in Mount Prospect. He stated that in 1967 the mortgage on the property was

in default and the Russos purchased the property. He was not aware of any conversations between Edward and Nancy David and Franklin Savings and Loan Association.

The trial court decided to treat the arrangement between the Davids and the Russos as a partnership, to order the sale of the property, and to divide the proceeds equally. The Russos appeal that decision and the Davids cross-appeal, stating the court erred in awarding the Russos one-half of the proceeds from the sale of the house.

The initial question presented is whether plaintiffs pleaded sufficient allegations to invoke relief under a constructive trust theory. Pleadings must be informative of the issues and inform the other party of the nature of the claim he must meet at trial. (See *Central States Southeast & Southwest Areas Pension Fund v. Gaylur Products, Inc.* (1978), 66 Ill. App. 3d 709, 384 N.E.2d 123.) "A complaint will not be dismissed for failure to state a cause of action if the facts essential to its claim appear by reasonable implication." *Central States Pension Fund,* at 713.

Defendants assert that allegations of a complaint to establish a constructive trust must be specific; they cite several cases for that position. However, in the cases defendants cite, the court could not find sufficient allegations of fact to create a constructive trust and, therefore, affirmed dismissals of the complaint. (See *Perry v. Wyeth* (1962), 25 Ill. 2d 250, 184 N.E.2d 861; *Dial v. Dial* (1959), 17 Ill. 2d 537, 162 N.E.2d 404.) In *Perry*, the plaintiff brought an action seeking to impose a constructive trust upon certain real estate. The title to the property was in the name of defendant, the widow of plaintiff's son. The defendant's motion to dismiss was on the ground that the amended complaint failed to state a cause of action for a constructive trust. The court stated:

> "The allegations of the amended complaint contain no facts charging fraud * * *. * * * Nor are there any facts alleged in the amended complaint creating a fiduciary relationship between plaintiff and defendant or between plaintiff and her son." 25 Ill. 2d 250, 253.

In the instant case, plaintiffs allege in their amended complaint that prior to the execution of the quit-claim deeds Ronald Brunetti contacted the Russos, "his friends, whom he had known for many years," and asked them to take title to the property after the deeds were executed to Franklin Savings and Loan Association. Plaintiffs state there were several conversations regarding the transaction; however, Ronald Brunetti died shortly after executing the quit-claim deeds. Thereafter, plaintiffs allege that the son and daughter-in-law of Ronald Brunetti went to the Russos to ask them to buy the property and hold the title in the name of Edward and Nancy David. They agreed, as long as Edward David would also do carpentry for the Russos. Here, plaintiffs allege sufficient facts in their

amended complaint to invoke relief under their theory of a constructive trust.

■■ A constructive trust is not raised by an agreement or understanding of the parties but by operation of law and is imposed by a court of equity. The purpose is to prevent a person from holding for his own benefit property which has been gained by reason of a special trust or confidence placed in them by innocent persons. *County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623, 627, 344 N.E.2d 540, 545; *Tarpoff v. Karandjeff* (1964), 51 Ill. App. 2d 454, 457, 201 N.E.2d 549, 551.

Constructive trusts are divided into two general groups—one, where actual fraud exists, and the other, where there exists a confidential or fiduciary relationship. (*Whewell v. Cox* (1977), 54 Ill. App. 3d 179, 183, 369 N.E.2d 330, 334.) In the present case, there is no allegation of fraud, so only the point of whether a fiduciary relationship existed is at issue. Whether or not a fiduciary relationship did exist between the parties depends on the facts in each case; the mere existence of such a relationship does not of itself give rise to a constructive trust. "The requisite fiduciary relationship exists where one reposes trust and confidence in the dominant party who thereby gains an influence and superiority." (*Neurauter v. Reiner* (1969), 117 Ill. App. 2d 141, 147, 254 N.E.2d 66, 70.) There are no set bounds as to what type relationship is necessary to invoke such protection. "The origin of the confidence and the source of influence are immaterial. It exists when one person trusts in and relies on another." (*Anderson v. Lybeck* (1958), 15 Ill. 2d 227, 232, 154 N.E.2d 259, 262.) "The relationship may be moral, social, domestic, or merely personal." (*Anderson*, at 232; *Melish v. Vogel* (1975), 35 Ill. App. 3d 125, 136, 343 N.E.2d 17, 26.) In the instant case, plaintiffs have pleaded facts which are sufficient to require the imposition of a constructive trust. Plaintiffs stated that their family and the Russos had been friends for numerous years. Testimony was given at trial that the Davids had gone to the Russos for assistance in procuring the property in question, and that the Russos offered to put the title in their name if the Davids would make the mortgage payments.

The trial court apparently believed this theory of the case and, since the facts of a constructive trust case are of such consequence, the opinion of the trier of fact must be given great weight. (*Whewell*, at 184.) The trial judge stated: "The evidence leads this court to believe that the Russos and the Davids entered into an agreement wherein the Russos were to hold the property for the Davids." The court found that some of the checks given the Russos by the Davids indicated they were for loan repayment. The court also found that in light of the extensive improvements to the property the Davids treated the property as their own and they at all times occupied the property.

Although the trial court did not mention the existence of a fiduciary

relationship between the parties, he did state the parties had been friends and were involved in a business transaction together. It is clear that a fiduciary relationship may arise from an intimate business association. *Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 495, 147 N.E.2d 69, 73; *Schueler v. Blomstrand* (1946), 394 Ill. 600, 611, 69 N.E.2d 328, 333.

■■ We find the complaint praying for the establishment of a constructive trust is sufficient as a matter of law.

Defendants also contend that plaintiffs' action is barred by the statute of limitations and the doctrine of laches. The general rule is that constructive trusts are subject to the operation of the statute of limitations. *Neurauter v. Reiner* (1969), 117 Ill. App. 2d 141, 148, 254 N.E.2d 66, 70.

■■■ Defendants are correct when they state the instant case is controlled by the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 16), which states:

> "[A]ctions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, * * * and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued."

Defendants allege that plaintiffs' suit is based upon events which occurred in 1967 and they did not commence suit for the imposition of a constructive trust until 10 years later, in 1977.

Defendants cite *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 374 N.E.2d 670, as holding that constructive trusts are subject to the operation of the 5-year statute of limitations. However, In *Chicago Park District*, they applied the "discovery rule," stating that its application in specific situations must be carefully scrutinized. The court stated: "We think the City was under a duty to specifically plead the facts necessary to explain why the 'discovery' of its cause of action did not occur sooner." 58 Ill. App. 3d 879, 888.

In the case at bar, plaintiffs assert that prior to the filing of the forcible detainer action neither they nor their parents had any reason to suspect the Russos were acting against their interests. Plaintiffs allege the filing of the forcible detainer action was the first time they became aware of defendants' intent. The forcible action was filed only a few weeks prior to the suit for constructive trust. Therefore, the plaintiffs did not discover defendants' adverse actions until the forcible detainer suit was filed. We find that in applying the discovery rule to the instant case plaintiffs filed suit well within the statutory period.

Defendants tender much of the same argument in defense of their charge of laches as in their argument for the statute of limitations. Defendants state that critical to this case is the fact that several witnesses were unavailable at trial. However, there were several other witnesses

who testified to what had transpired regarding the property. Defendants claim the passage of 10 years before filing suit should be considered an unreasonable delay, and that such an action results in undue hardship for them. We cannot agree. As we stated above, the suit was commenced within the statutory period, and although certain "critical" parties had died prior to trial, we do not find this resulted in any undue hardship to defendants nor was such a delay intentional on plaintiffs' part.

Defendants contend the amended pleadings do not conform to the findings and are not consistent with the relief granted by the trial judge. Plaintiffs in their prayer for relief asked that a constructive trust be imposed and that John and Mary Russo be declared constructive trustees of the property. The judge stated that he was going to treat the arrangement between the parties as a partnership, and he ordered the property sold and an equal division between the plaintiffs and defendants be made.

The defendants are correct when they state plaintiffs did not raise the partnership issue nor seek to have the property sold and divided. However, after reading the judge's memorandum, along with the final order, it becomes clear he did not find that a legal partnership existed between the parties. He found the defendants were holding title to the property under an arrangement whereby they were helping the Davids and had the title as security until the aid was repaid. Further, he said the only equitable thing to do in the case was to treat the arrangement as a partnership because each party made contributions that enhanced the corpus. Although that was the equitable remedy the court made, we do not agree with the court that the arrangement should be treated as a partnership and the property sold. We believe a constructive trust should be imposed; we will discuss that determination in plaintiffs' cross-appeal.

Defendants also raised the issue of the doctrine of unclean hands. They argue the Davids were attempting to avoid their creditors and this is the reason they asked the Russos to purchase the property on their behalf. ■■ It is well settled that misconduct on the part of a plaintiff that will defeat a recovery in the court of equity under the doctrine of "unclean hands" must have been conduct involving the transaction complained of and it must have been fraud, misconduct or bad faith toward the defendant making the contention. *Mascenic v. Anderson* (1977), 53 Ill. App. 3d 971, 972, 369 N.E.2d 172, 173.

In the present case, there was no direct evidence that plaintiffs' conduct in asking the Russos to purchase the property on their behalf was done fraudulently or in bad faith, but merely to assist the Davids since they were unable to take the title in their name. We do not find any evidence that would entitle the Russos to invoke the doctrine of "unclean hands."

From our reading of the record and the trial court's findings, we believe plaintiffs met their burden of proof. The Russos and the Davids both state that the quantum of proof necessary should be clear and convincing of actual or constructive fraud before the court will impose a constructive trust. (*Miller v. Heller* (1967), 106 Ill. App. 2d 383, 394, 246 N.E.2d 150, 157.) There has been no showing of such fraud in this case.

▄▆ We find defendants' last contention to be frivolous and without merit. After·reviewing the record thoroughly, we see no evidence of collusion between the trial judge and plaintiffs' counsel. Such an argument is very offensive to this court, and we caution parties against such statements without any facts to substantiate the allegation.

Plaintiffs assert on cross-appeal that the court allowed defendants more than they should have been given. The Davids contend that equity demands the property be awarded entirely to them with reimbursement to the Russos of funds they expended. We agree with the Davids.

As stated above, we believe plaintiffs have made out their case for the imposition of a constructive trust. As the judge stated in his findings:

> "The evidence leads this court to believe that the Russos and the Davids entered into an agreement wherein the Russos were to hold the property for the Davids.
>
> * * *
>
> * * * These facts all lead this court to conclude that the Russos held the title under an arrangement whereby they were helping the Davids and had the title as security until their aid was repaid."

We find the equitable remedy that should be granted is to create a constructive trust and make John and Mary Russo constructive trustees of the property for the benefit of plaintiffs, with the trial court determining the amount due defendants for their expenditures.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for a determination of the amount of money owed defendants from plaintiffs.

Reversed and remanded, with directions.

LINN, P. J., and JIGANTI, J., concur.