ANNA MARIE DAVID et al., Plaintiffs-Appellants, v. JOHN RUSSO et al., Defendants-Appellees.

First District (4th Division)   No. 82—2495

Opinion filed November 10, 1983.

Leonard Rubin, of Chicago, for appellants.

Richard J. Belmonte, of Chicago, for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Anna Marie and Paula David, appeal from the decision of the circuit court of Cook County awarding defendants, John and Mary Russo, the sum of $22,542.63 as reimbursement for funds expended by the Russos while constructive trustees of a parcel of residential property in which plaintiffs held the beneficial interest. Plaintiffs raise the following issues on appeal: (1) whether the accounting ordered by the appellate court in an earlier, related case should include reimbursement for expenditures made after the time period reviewed in the prior appellate court decision; (2) whether defendants breached their duty as constructive trustees when they ignored a court order and made repairs to the property without prior authorization from the trial court; and (3) whether the trial court erred in computing the amount of reimbursement plaintiffs owed to defendants.

We affirm the decision of the trial court but reduce the amount awarded to defendants as reimbursement for their expenses.

FACTS

This appeal is an outgrowth of earlier litigation between the same parties. The first action resulted in the creation of a constructive trust with defendants, John and Mary Russo, named as constructive trustees of a parcel of residential real estate for the benefit of Anna Marie and Paula David, orphaned minors. (*David v. Russo* (1980), 91 Ill. App. 3d 1023, 415 N.E.2d 531.) Facts from the earlier case necessary to an understanding of this appeal are summarized below.

Testimony in the earlier case established that the parents of the plaintiffs, unable to obtain financing to purchase a home in Mount Prospect, Illinois, reached an agreement with their friends the Russos whereby the Russos, acting as agents for the Davids, provided the $2,000 down payment, obtained the mortgage, and held legal title to the property as security while the Davids, owners of the beneficial title, paid all mortgage, tax, and special assessment payments on the house. The Davids' monthly payments, each for an amount greater than the monthly sum owed to the mortgagee bank, were made directly to the Russos, who in turn deposited the payments in a savings

account from which the bank automatically deducted the proper amount each month.

Nancy David, the girls' mother, died in 1972; their father Edward died in 1977. Having no income, the David girls defaulted in their monthly payment to the Russos. The Russos then filed a forcible detainer action against them, claiming that the Davids had been nothing more than renters of the property for 10 years. In response the Davids sued for the imposition of a constructive trust on the ground that although the Russos held legal title to the property, the Davids held the equitable title and therefore were the true owners. During the pendency of these actions, the Davids were able to rent the property and thus make the necessary payments to the Russos until December 1978, when the tenants moved and no other tenants could be found.

The house was vacant for two months, December 1978 and January 1979. The Russos continued to make mortgage payments during those two months and then petitioned the trial court to grant them possession of the property. The petition, granted on February 6, 1979, also relieved the Davids from making any further payments to the Russos.

When the Russos went to inspect the property later in February, they discovered that extensive damage to the house had resulted both from frozen and burst water pipes in the bathroom and basement and from what appeared to be wanton destruction by vandals. On May 23, 1979, the trial court reached a decision in the constructive trust action, finding that a partnership existed between the Davids and the Russos and ordering that the property be sold and the proceeds divided between the parties. Both sides appealed from that judgment.

Believing that they had at least a 50% interest in the property, the Russos filed a further petition in the trial court, complaining about the condition of the property and requesting that the Davids be ordered to reimburse them for the mortgage payments made during the two months the house was vacant. On June 8, 1979, the trial court entered the following order:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED

A) that judgment is entered for the Defendants John and Mary Russo, and against the plaintiffs in the amount of $650. Execution is stayed until a final determination by the appellate courts and a final accounting.

B) that the Defendants John and Mary Russo,

1. will make all mortgages, taxes, assessments, insurance and other legitimate expenses on the said property,

2. May occupy the said property,

3. May arrange to make necessary repairs for normal habitation upon presentation of a petition with proper notice,

4. May have necessary plumbing repairs done immediately.

C) The court will [make] a determination of the fair rental value of the said property.

D) The court will balance the equities in a final accounting.

E) The Defendants need not pay any money on the rental value but this will be determined at the final accounting."

In February 1980, the Russos hired Rass Bosswell, a handyman, to live in the house and to repair or replace the damaged walls, doors, floors, windows, exterior siding, electrical wiring, plumbing, appliances, and other fixtures. Bosswell testified that although the repairs themselves took approximately 160 hours, he needed six months to complete the job because his full time employment allowed him to work on the house only during his free time. Boswell lived in the house rent free until March 1982.

Meanwhile, on December 18, 1980, the appellate court reversed the trial court and imposed a constructive trust on the Russos, finding the Davids to be sole owners of the property and the Russos to be holding the legal title only as security for the loan for the down payment. The Russos filed an appeal in the Illinois Supreme Court, continued to make the mortgage payments, and kept Bosswell in possession of the property. On May 13, 1981, the supreme court declined to hear the appeal, and the appellate court opinion imposing the constructive trust and remanding the case to the trial court for an accounting was made effective. As of that date, the Russos ceased making mortgage payments; however, upon the institution of foreclosure proceedings against them, they paid all arrearages and costs to have the foreclosure suit dismissed.

On June 5, 1981, the Davids petitioned to set a hearing date for the accounting, but several delays ensued, and the hearing did not begin until May 7, 1982. Five additional hearing dates were necessary, and the accounting was not completed until September 15, 1982.

At the hearing on the accounting, the Russos presented an itemized list of 41 expenditures totaling $38,433, all of which they claimed directly benefited the property and for which they requested reimbursement. Various witnesses then established the state of disrepair of the house when the Russos took possession in February 1979 and testified concerning bills for materials, labor, utilities, and landscaping, assessments for the new sewer, and payments to forestall foreclosure on the mortgage, all of which had been paid by the Russos in ad-

dition to the monthly mortgage deduction from their savings account. At the conclusion of the testimony, the trial judge allowed 31 of the claimed expenses and entered an order allowing $22,542.63 as reimbursement due to the Russos from the Davids. The Davids appealed.

OPINION

I

The first issue raised by plaintiffs on appeal concerns the authority of the trial court in a remand for an accounting to award reimbursement for expenditures made by defendants beyond the period reviewed by the appellate court. Plaintiffs argue that the computation should be made for only that time period subject to review by the appellate court, *i.e.*, from August 1967 to May 1979, because the "Appellate Court could not have contemplated a prospective effect of its mandate, and at the time it was rendered a prospective mandate was not needed." Plaintiffs cite *Spring Lake Drainage & Levee District v. Stead* (1914), 263 Ill. 247, 104 N.E. 1014, and *Fisher v. Burks* (1918), 285 Ill. 290, 120 N.E. 768, as authority for the proposition that when a case is remanded with directions, the trial court is bound by those directions and may not take any action except as directed. Consequently, plaintiffs argue, the trial court at the accounting hearing was prevented from looking into any expenditures made by the Russos after May, 1979. We disagree.

As stated by the supreme court in *Fisher*, "Where the direction contained in [the mandate from the supreme court] is precise and unambiguous, it is the duty of the trial court to carry it into execution and not to look elsewhere for authority to change its meaning or direction." (285 Ill. 290, 293, 120 N.E. 768, 769.) In both *Spring Lake* and *Fisher*, the supreme court's mandate ordered the trial court to enter a specific decree, in one case for a permanent injunction and in the other for a dismissal for want of equity. "There is no question that when a cause has been remanded with special directions it is out of the power of the court receiving such direction to open the case and take any action except as directed." *Spring Lake Drainage & Levee District v. Stead* (1914), 263 Ill. 247, 251, 104 N.E. 1014, 1015-16.

However, "if specific directions are not given, the trial court is required to examine the appellate court's opinion and determine therefrom what further proceedings would be proper and consistent with the opinion [citations] and, in this regard, it may allow the introduction of new evidence if consistent with the announced legal princi-

ples [citations]." (*Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 666, 405 N.E.2d 1220, 1225.) In the present case, the appellate court's direction that the cause be remanded "for a determination of the amount of money owed defendants from plaintiffs" (*David v. Russo* (1980), 91 Ill. App. 3d 1023, 1030, 415 N.E.2d 531, 538) is clearly general in nature. As constructive trustees, defendants owed plaintiffs a duty to deal prudently with the property during the pendency of the trust. (*In re Will of Hartzell* (1963), 43 Ill. App. 2d 118, 192 N.E.2d 697.) Because defendants would have been held accountable for any waste of the property while they were in possession, we find that the trial court correctly took further evidence and allowed reimbursement for all documented expenses defendants incurred in repairing and preserving the property up to the time title and right to possession were reconveyed to plaintiffs.

## II

Plaintiffs' second contention on appeal is that the trial court erred in awarding defendants reimbursement for amounts spent to repair and maintain the property without the prior court authorization specified in the June 14, 1979, order quoted above. While we agree that certain sanctions should be available to punish noncompliance with court orders, we do not believe their imposition to be appropriate in the instant case.

At the time the repairs were being made, plaintiffs, who had moved only a short distance away, made no attempt to assert their right to demand prior court approval before any expenditures were made by defendants. Even if we believe that by ignoring the court's order the defendants breached their fiduciary duty as constructive trustees of the property, the plaintiffs, as beneficiaries, acquiesced in the breach by accepting the benefits defendants conferred on the property and thereby relieved defendants from liability for such breach. *In re Will of Hartzell* (1963), 43 Ill. App. 2d 118, 134, 192 N.E.2d 697, 706.

"Where a trustee has incurred expenses which the court can clearly and satisfactorily see were necessary, he will be allowed them in the same manner as if leave had been granted on petitions before incurring them." (*Warner v. Rogers* (1929), 255 Ill. App. 78, 88.) We therefore find no error in the trial court's allowing reimbursement for expenditures made by defendants without prior court approval.

## III

The final question raised on appeal is whether the trial court

erred in computing the amount of reimbursement plaintiffs owed to defendants. At the hearing, plaintiffs challenged several of the expenditures made by defendants because (1) the expenses failed to benefit the property directly, (2) plaintiffs had furnished the funds in question, or (3) a court order had relieved plaintiffs of the responsibility for making certain payments.

The able trial judge allowed defendants all documented expenses for labor and materials used in the repair and maintenance of the property as well as all utility bills on the ground that heat, light and water were necessary to preserve and protect the premises from further damage from either weather or vandals. Also allowed were all special assessment payments made by defendants because plaintiffs were unable to produce convincing proof that they had furnished the funds for such payments. Finally, all mortgage payments were credited to defendants because they had been made on behalf of plaintiffs. We therefore find no error in the judge's computation of the amount owed by plaintiffs to defendants for expenditures made during the period of the constructive trust, for "expenses incident to the preservation of a trust or for the benefit thereof are properly chargeable against and reimbursable from the trust estate." *Brown v. Commercial National Bank* (1968), 94 Ill. App. 2d 273, 280, 237 N.E.2d 567, 571, *affirmed* (1969), 42 Ill. 2d 365, 247 N.E.2d 894, *cert. denied* (1969), 396 U.S. 961, 24 L. Ed. 2d 425, 90 S. Ct. 436; *Warner v. Rogers* (1929), 255 Ill. App. 78.

We do find error, however, in the failure of the trial judge to compute the amount owed by defendants to plaintiffs and to reduce by that amount the total due to defendants. The June 14, 1979, order imposing upon defendants the duty to make all mortgage payments and granting them possession of the property and the right to make repairs also directed the trial court, at the time of the accounting, to make a determination of the fair rental value of the property, to balance the equities in a final accounting, and to assess the fair rental value of the property against defendants, although they were to pay no rental value until the accounting. We find the trial judge erred in failing to assign to plaintiffs the credit for rental value due from defendants.

The purpose of a constructive trust, in addition to preventing unjust enrichment (*Hofert v. Latorri* (1961), 22 Ill. 2d 126, 174 N.E.2d 866), is to make available against the involuntary trustee all the conventional remedies available against a conventional fiduciary for breach of duty. (*Nelson Development Co. v. Ohio Oil Co.* (1942), 45 F. Supp. 933.) "The trustee's duty to serve the interests of the benefi-

ciary with complete loyalty, excluding all self-interest, prohibits him from dealing with the trust property for his individual benefit." (*Home Federal Savings & Loan Association v. Zarkin* (1982), 89 Ill. 2d 232, 239, 432 N.E.2d 841, 846.) As trustees, defendants had a duty in managing the property to "exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs ***." (*In re Will of Hartzell* (1963), 43 Ill. App. 2d 118, 141, 192 N.E.2d 697, 709.) While a trustee acting in good faith will be held accountable only for what he has actually received, the basis of accounting where the trustee has been guilty of misconduct is the proceeds or profits which the trustee might have received from the property by the exercise of reasonable care and prudence. (*Van Buskirk v. Van Buskirk* (1893), 148 Ill. 9, 26, 35 N.E. 383, 387.) In view of the foregoing, we find that defendants owe plaintiffs the reasonable value of the use and occupation of the property for the time they had possession, for "[i]t is only equitable that there should be compensation in proportion to benefits." (*Breit v. Yeaton* (1881), 101 Ill. 242, 273.) In the present case, the profit which might have been received is the same as the fair market rental value of the property.

The only evidence of the rental value of the property in question was given by a local real estate agent, who testified that similar houses in the area, if in prime condition, would rent for $600 per month. Although this figure was not controverted, the trial judge correctly took into consideration the state of disrepair of the house and did not accept $600 as the fair rental value of the property in question.

■ A court acting in equity should enter a decree adjudicating all matters in controversy so as to avoid multiple litigation and to do full and complete justice. (*Midway Tobacco Co. v. Mahin* (1976), 42 Ill. App. 3d 797, 356 N.E.2d 909.) Further, Supreme Court Rule 366(a)(5) (73 Ill. 2d R. 366(a)(5)) affirms the power of the reviewing court to render any judgment and make any order that the case may require. Consequently, this court finds that, based on the record presented, a reasonable and fair rental value of the property was the monthly amount that defendants were charging plaintiffs on the mortgage, $295. Rass Bosswell testified that he needed 160 hours, the equivalent of one month's steady work, to restore the house to habitable condition. Defendants retained possession of the house for 36 months. After deducting the month needed for necessary repairs, we find that defendants owe plaintiffs $10,329 as the fair rental value of the house for 35 months. When the credits due each party are balanced against

each other, the net amount owed to defendants by plaintiffs is $12,213.63.

Judgment affirmed; award reduced.

ROMITI, P.J., and JOHNSON, J., concur.