(No. 35776.—

ANNA CUNNINGHAM, Appellant, *vs.* WILLIAM CUNNINGHAM *et al.,* Appellees.

*Opinion filed December 1, 1960.*

ERLENBORN & BAUER, of Elmhurst, (JOHN N. ERLEN-
BORN, WILLIAM J. BAUER, and PETER W. ERNST, of coun-
sen,) for appellant.

RATHJE & WOODWARD, of Wheaton, (WILLIAM G.
RATHJE, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the
court:

Plaintiff, Anna Cunningham, and her husband, Thomas
Cunningham, since deceased, filed suit in the circuit court
of DuPage County, seeking to impose a constructive trust
upon a certain parcel of real estate, alleging that defend-
ants had obtained it from them without consideration and
by violation of a fiduciary relationship. Upon trial of the
cause, the court found no proof of a constructive trust or
unjust enrichment and entered its decree dismissing the
complaint. A freehold being involved, plaintiff appeals
directly to this court.

The record shows that prior to the conveyance of the property in question to defendants, on June 23, 1956, it was owned by Thomas Cunningham and his wife Anna. In 1955, Thomas Cunningham asked his nephew, William Cunningham, who was a carpenter, to build a house on the premises. William refused on the ground that he was too busy. Thomas then proceeded with plans to build the house himself. Sometime thereafter, Thomas approached William with a proposal whereby the uncle would furnish the money and the nephew the labor for building the house, and they would then sell the house and split the profits. After some hesitation, the nephew, William, accepted this proposal. A pre-cut shell of a house was purchased and erected on the premises. This was paid for by money deposited by Thomas Cunningham in escrow in the Roselle State Bank. Certain other expenses in connection with the construction of the house were paid for by checks signed in blank by Thomas from time to time as the occasion arose. William would fill in the proper amount of each check and deliver it to the person entitled to payment.

Before the house was completed, Thomas ran out of money. He estimated it would take about $4000 more to finish the house. Because of the age of Thomas and his wife, they were unable to secure a loan to complete the house. Thomas asked William to secure a loan, but the nephew refused. At the direction of his uncle, William stopped work on the house in February, 1956. At that time, the heating, plumbing and electrical work, and the basement floor remained to be done. Thomas tried to sell the house, but was unsuccessful. In June of 1956, Thomas suggested that he give the property to William so that William could secure a loan and finish the house. It was agreed that Thomas would make the payments on the loan and should live in the house for life.

On June 23, 1956, Thomas and his wife conveyed the property to William and his wife. The deed was prepared

and executed at the Roselle State Bank, at which time the vice-president of the bank asked the uncle if he knew that he was turning the property over to his nephew, and Thomas acknowledged that that was the way he wanted it. William and his wife then borrowed $4000 secured by a mortgage on the property. This amount proved insufficient to complete the house, and it became necessary for William to borrow an additional $2000. William proceeded to work on the house until March of 1957, when he notified his uncle that it was ready for occupancy. Thomas then refused to move in. The exact reason for this refusal is not entirely clear from the record. Plaintiff Anna Cunningham, widow of Thomas, indicated that she and her husband would have been willing to move in at a rental equal to the initial monthly payments on the $4000 mortgage, but that when the amount of the loan was increased, this made the payments too high. William Cunningham, however, testified that he had discussed the additional loan with Thomas and that Thomas had acquiesced in the arrangement. There was also evidence from which it could reasonably be inferred that the reason Thomas refused to move in was that he had just lost his tenant in a house he owned elsewhere and that he preferred to live in that rent free rather than make payments on the house William had built. Whatever the reason, the evidence is clear that Thomas and his wife were given ample opportunity to move into the house and that their failure to do so was due to their own choice.

At the time Thomas refused to move into the house, he suggested that William sell it. At that time Thomas had invested approximately $7000 in the property, and William had some $10,000 in it, including the amount of the mortgage indebtedness and the reasonable value of his labor. A real-estate broker's appraisal valued the house and lot at $11,400, and there were factors in connection with its location which would make selling difficult. It was ap-

parent that a sale could not be made except at a substantial loss. William, therefore, refused to sell, and later moved into the house himself. Thereafter this suit was instituted by plaintiff and her husband.

The court found that plaintiff had failed to prove her case for a constructive trust and, finding no unjust enrichment on the part of defendants, dismissed the complaint.

We can find nothing in the record to sustain plaintiff's theory of a constructive trust. Constructive trusts are divided into two classes; one where actual fraud is considered as equitable ground for raising the trust, and the other when a fiduciary relationship exists and the subsequent abuse of the confidence reposed is sufficient to establish the trust. (*Bremer* v. *Bremer,* 411 Ill. 454.) Here there is no evidence, nor is there any contention by plaintiff, that defendants were guilty of any actual fraud. Neither does the record disclose any substantial evidence either of the existence of a fiduciary relationship or of the violation thereof. It is true that Thomas and William were uncle and nephew. This court, however, has consistently held that blood relationship alone does not make one a fiduciary. (*Bremer* v. *Bremer,* 411 Ill. 454; *Sawyer* v. *Creighton,* 403 Ill. 364.) When a confidential or fiduciary relationship does not exist as a matter of law, it must be proved by clear and convincing evidence in order to establish a basis for raising a constructive trust. Factors to be taken into consideration are degree of kinship, if any, disparity in age, health, mental condition, education and business experience between the parties, and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to the other and reposed faith and confidence in him. *Kester* v. *Crilly,* 405 Ill. 425.

While it is admitted that Thomas Cunningham was somewhat older than his nephew, William, the exact difference in their ages does not appear from the record, nor is there any showing that the difference in ages played

any significant part in their personal or business relationship or caused the uncle to be subservient to the nephew. Neither does it appear from the record that Thomas Cunningham in fact reposed any special trust and confidence in his nephew. There is no evidence of any personal or business relationship between the parties other than those relating to the particular property involved, which were entered into at the instigation and for the convenience of the uncle. The funds Thomas invested in the improvements to the property were deposited in escrow at the Roselle State Bank and William was accountable for each expenditure therefrom. There is no complaint or allegation that the nephew overreached in this regard, or that Thomas Cunningham did not have full knowledge of each transaction.

Far from showing that the nephew, William, occupied a position of confidence which enabled him to take unfair advantage of his uncle, the record clearly shows that the uncle was the moving party throughout the entire series of transactions. The business venture entered into initially by the parties was not solicited by the nephew, but was suggested by the uncle, and entered into reluctantly by the nephew. The conveyance of the property to defendants was made at the suggestion of the uncle. The nephew fulfilled his part of the agreement in constructing the house and making it ready for occupance. The refusal and failure of Thomas and his wife to move into the house was due to their own choice and not to any act on the part of the nephew. Their refusal gave them no right to demand that William sell the property and take a substantial financial loss as this record discloses he would have had to do.

We can find nothing whatever in the record to warrant imposing a constructive trust. No such trust and confidence was reposed by plaintiffs in defendants whereby defendants gained such a position of influence and superiority

over plaintiffs as to give rise to a confidential or fiduciary relationship. The conveyance was not engineered by defendants as a result of a superior position held by them over plaintiffs. No actual fraud is alleged or shown. There being no confidential or fiduciary relationship to violate, no advantage taken by defendants as a result of a dominant or superior position, and no actual fraud, no constructive trust could arise.

Moreover, the chancellor found that no constructive trust or unjust enrichment was proved. When a chancellor has heard the testimony in open court and sees and hears the witnesses, we will not reverse his findings unless they are palpably against the weight of the evidence. (*Clark* v. *Clark,* 398 Ill. 592.) From our review of this record, we do not find the chancellor's holding in this cause is palpably against or contrary to the manifest weight of the evidence.

The decree of the circuit court of DuPage County is affirmed.

*Decree affirmed.*