**Lonnie S. WILLIAMS, Stanley Vivian and Hope Fair Housing Center, Plaintiff,**

v.

**Dennis ADAMS, a/k/a Dennie Adams, Mrs. Dennis Adams and Harry Bartlett, Defendant.**

No. 85 C 6358.

United States District Court,
N.D. Illinois, E.D.

Nov. 14, 1985.

Jeffrey L. Taren, Kinoy, Taren, Geraghty & Potter, Michael J. Kaufman/Fay Clayton, Sachnoff, Weaver & Rubenstein, Chicago, Ill., for plaintiff.

Harry S. Weber, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This case involves alleged racial discrimination on the part of the owner of two rooming houses and his agents. Individual plaintiffs Lonnie Williams ("Williams") and Stanley Vivian ("Vivian") and corporate plaintiff Hope Fair Housing Center ("Hope") filed this suit under provisions of the Fair Housing Act of 1968, 42 U.S.C. § 3604 (1982)[1] and the Civil Rights Act of

---

**1.** That provision states in pertinent part:

As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin.

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, or national origin, or an intention to make any such preference, limitation, or discrimination.

(d) To represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspec-

1866, as amended, 42 U.S.C. § 1982 (1982).[2] They complained that defendant Dennis Adams ("Adams"), the owner of two rooming houses, and his agents, Mrs. Dennis Adams ("Mrs. Adams") and Harry Bartlett ("Bartlett"), wrongfully refused to rent available housing to Vivian and refused to continue renting to Williams on the basis of race. Vivian and Williams are black citizens. The matter currently pending before this Court is the defendants' motion to dismiss[3] the complaint. For the following reasons, the motion is granted in part and denied in part.

## I. *Factual Allegations*

For the purposes of this motion, we assume that the facts alleged are true and view them, along with all reasonable inferences to be drawn from them, in the light most favorable to the plaintiffs. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). Furthermore, we cannot grant the motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). With these standards in mind, we turn to the complaint.

The complaint states that on or about February 7, 1985, two of the defendants, Mr. and Mrs. Adams, provided false information to Vivian about housing availabilities at their properties. They also refused to rent, refused to negotiate for the rental of housing and otherwise made housing unavailable to Vivian because of his race. On June 2, 1985, or thereabout, defendant Adams, through his agent, Bartlett, refused to continue renting a room to Williams, also on the basis of his race. At all times during this period, housing was available at both of the rooming houses owned and operated by defendants, and the individual plaintiffs were ready, willing and able to rent rooms at the defendants' rental price. In carrying out these actions, it is charged that defendants acted intentionally and maliciously with willful and wanton disregard for the plaintiffs' rights and feelings.

The third plaintiff, Hope Fair Housing Center ("Hope"), is an Illinois not-for-profit corporation with offices in Lombard, Illinois, a western suburb of Chicago. It alleges, as discussed in further detail below, that it, too, has an interest in the outcome of this litigation and thus should be conferred standing to sue along with the individual plaintiffs, Williams and Vivian.

## II. *The Motion to Dismiss*

### A. *Hope's Standing*

This case presents the Court with the interesting issue of the extent to which an organization must allege an injury to establish standing to sue. Defendants have moved to have plaintiff Hope dismissed from this case for lack of standing. They assert that Hope has not alleged that it has personally suffered any actual or threatened injury caused by the defendants' al-

---

tion, sale, or rental when such dwelling is in fact so available.

   (e) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, sex, or national origin.

**2.** That provision states:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

**3.** Defendants' motion was formally predicated on Fed.R.Civ.P. 12(f) as a motion to strike "from any pleading, any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). However, this Court notes that motions to strike are generally disfavored and rarely granted. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1380 (1969). Moreover, a motion to strike is "neither an authorized nor a proper way to procure the dismissal of all or part of a complaint...." *Id.* (Footnote omitted). Notwithstanding defense counsel's mislabeling of this motion, we will entertain this motion as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), which is how it properly should have been filed.

leged discriminatory conduct with regard to plaintiffs Williams and Vivian.

The issue of standing is a central question of jurisdiction, involving basic notions of the justiciability of a particular plaintiff's claim in the federal court system. Its constitutional underpinnings [4] are in the "case or controversy" requirement of Article III of the Constitution. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The constitutional element of the standing requirement necessitates an inquiry into whether the plaintiff has alleged a sufficient personal stake in the outcome of the controversy to warrant his or her invocation of federal jurisdiction which would justify the exercise of the court's remedial powers on the plaintiff's behalf. *Id.; Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Given these general standards, we now explore their application to the plaintiff Hope. The federal courts have often been asked to define the extent to which organizations with an interest in the outcome of particular litigation may maintain standing. In fact, groups organized to oppose housing discrimination often have been, as here, at the heart of the litigation. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 377, 102 S.Ct. 1114, 1123, 71 L.Ed.2d 214 (1982); *Hope, Inc. v. County of DuPage*, 738 F.2d 797 (7th Cir.1984). An organization such as Hope may assert standing for itself, or in its representative capacity in behalf of its members. *Warth*, 422 U.S. at 511, 95 S.Ct. at 2211.

In the present case, Hope has pled that its purpose:

is to promote the formation and continuation of an integrated community, the provision of housing on a nondiscriminatory basis and the building of low-income housing in the Western suburbs [sic] of Chicago. Plaintiff organization has an interest in the outcome of this litigation in that the maintenance of a policy of racial discrimination by the defendants, as alleged, is essential to the aims and policies of its organization and creates barriers for housing to many of its clients.[5]

Plaintiffs' Complaint, ¶ 5. However, no further allegations regarding the effect of the defendants' conduct on Hope appear anywhere in the complaint. Furthermore, Hope has not pled whether it seeks standing in its own behalf or in a representative capacity in behalf of its clients.

Despite its lack of clarity, the complaint seems to convey the idea that the harm alleged to have resulted from the defendants' discriminatory practices was that those practices countered Hope's goals and policies and, in addition, limited the availability of housing to Hope's clients. The question in this case is whether an injury to these interests is sufficient to establish standing.

It is clear that standing can be conferred on an organization based purely on non-economic interests which are being harmed in some way by the defendants. *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972).

4. Certain non-constitutional limits on standing also have been imposed by the United States Supreme Court, even where the minimum Article III standing requirements have been met. These limits reflect the Court's concerns that the judicial branch of the government confine its inquiries to particularized grievances rather than "abstract questions of wide public significance." *Warth*, 422 U.S. at 500, 95 S.Ct. at 2206. As summarized by the Court in *Warth*, these standards direct that, in order to establish standing, (1) the plaintiff's harm must be more than a generalized grievance shared "in substantially equal measure" by all or a large class of citizens; and (2) the plaintiff generally must assert his or her own legal rights and interests,

and not merely those of third parties. 422 U.S. at 499, 95 S.Ct. at 2205. Because defendants have framed their arguments in terms of the constitutional question, we deal only peripherally with these nonconstitutional issues.

5. The plaintiffs seem to have inadvertently omitted some words from the last sentence of this paragraph of the complaint. We assume that the plaintiffs complain not that defendants' "maintenance of a policy of racial discrimination ... is essential to the aims and policies of its organization" but that such a policy *undermines* those aims and policies.

However, the organization still must be subjected to some "distinct and palpable injury" linked to the defendants' behavior, *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), and the injury alleged must be more than the mere abstract injury to social interest rejected by the Supreme Court as insufficient to confer standing in *Sierra Club v. Morton*. Furthermore, the injury must be such that it "is likely to be redressed by a favorable decision" by the court. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

The standards set forth by the Supreme Court in its standing cases were applied to an organization quite similar in function to Hope in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 377, 102 S.Ct. 1114, 1123, 71 L.Ed.2d 214 (1982). *Havens* involved a lawsuit brought by individuals and an organization called "HOME" against the owner of an apartment complex who had allegedly engaged in the practice of racial steering.[6] HOME, as alleged in the complaint in *Havens*, was a non-profit Virginia corporation dedicated to making "equal opportunity in housing a reality in the Richmond Metropolitan Area." *Havens*, 455 U.S. at 368, 102 S.Ct. at 1119 (citing plaintiffs' complaint). HOME operated a housing counseling service and investigated complaints of housing discrimination. *Id.*

In asserting an injury for the purposes of fulfilling the standing requirement, HOME alleged that the defendants' steering practices "frustrated" HOME's counseling and referral services, causing a drain on its resources.[7] Justice Brennan, writing for a unanimous Court, upheld HOME's standing to sue, declaring that:

If, as broadly alleged, petitioners' steering practices have perceptibly impaired

HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests....

*Havens*, 455 U.S. at 379, 102 S.Ct. at 1124.

■ With respect to claims of standing in its own behalf, it is not enough that an organization allege that a particular defendant's conduct is against the policies or goals of that organization. It is precisely this type of broad organizational interest which the Supreme Court rejected in *Sierra Club v. Morton*, 405 U.S. 727, 739–40, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972), since it is too abstract to represent a meaningful basis for standing. If this type of interest were all that is necessary to establish standing, Hope would have standing in every individual case of alleged housing discrimination in DuPage County, or perhaps in an even broader geographical area.

In each of the cases on which plaintiff Hope relies, there is a more particularized allegation of injury directly linked to the defendant's conduct. In *Havens*, for example, the plaintiff organization alleged that it had devoted significant resources in identifying and attempting to counteract the defendants' racially discriminatory steering practices. *Havens*, 455 U.S. at 379, 102 S.Ct. at 1124. Hope also cited two cases from the Northern District of Illinois in which it was permitted standing to sue along with individual plaintiffs in housing discrimination actions. In *Ross v. Palco Construction Co.*, No. 83 C 4029, slip op.

---

**6.** Racial steering is the practice by certain real estate brokers and agents of preserving and encouraging racial segregation in housing by "steering" members of different racial groups to buildings or neighborhoods already predominantly occupied by members of the same group.

**7.** HOME's complaint stated that:

Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory steering practices.
*Havens*, 455 U.S. at 379, 102 S.Ct. at 1124.

(N.D.Ill. Oct. 4, 1983), there was a specific allegation that Hope Fair Housing Center was injured in its business since substantial amounts of funding for the organization were dependent on its success in placing clients in housing, and the defendants' discriminatory policies inhibited that success. The other district court case cited by plaintiff Hope, *Coleman v. Chateaux Lorraine Apartments*, No. 84 C 2433, slip op. (N.D. Ill. Sept. 4, 1984), is also distinguishable. There, as in *Ross*, Hope Fair Housing Center alleged that its public funding was dependent on its success in housing placement of minority clients. Furthermore, it was clear that the individual plaintiffs in *Coleman* were clients of Hope. *Coleman*, slip op. at 2. Therefore, Hope could easily have established standing either in an individual or a representative capacity in the *Coleman* case.

The Seventh Circuit Court of Appeals dealt with the issue of group standing in *Hope, Inc. v. County of DuPage*, 738 F.2d 797 (7th Cir.1984). In that case, ten individuals and Hope, Inc. (we assume that is the same organization as the present plaintiff) brought an action against DuPage County, members of its board and specific private landowners alleging that these defendants had unlawfully engaged in exclusionary housing practices. The district court granted standing to Hope in its representative capacity since it was determined that some of its directors were low- or moderate-income persons who alleged a distinct and palpable injury. On appeal, the defendants challenged the standing of both the individual plaintiffs and Hope. Hope argued that it had standing in its representative capacity, or in the alternative, that it had standing to sue in its own behalf.

The Seventh Circuit rejected both of Hope's standing claims and reversed the district court. In denying Hope's claim with respect to standing to sue in its own behalf, the Seventh Circuit held that Hope's inability to show any causal connection between the defendants' actions and the alleged injury to its corporate purpose was a fatal defect in its standing claim.

The court distinguished *Havens* by pointing out that *Havens* involved *"specific and particular discriminatory activity* in violation of the plaintiffs' rights." *Hope, Inc.*, 738 F.2d at 815. The Seventh Circuit noted that:

> [T]he very problem with the plaintiffs' allegations and proof in the present case (both the individual plaintiffs and HOPE) is that they fail to allege specific and particular discriminatory acts such as denial of zoning variations and special-use permits for low and moderate income housing projects.

*Id.*

However, the problem that presented itself in the Seventh Circuit *Hope, Inc.* decision does not appear here. In this case, there is clearly an allegation of specific and particular discriminatory activity sufficient to establish standing for the individual plaintiffs. The problem here is that nowhere in the complaint has Hope articulated how it or any of its members have been harmed by the defendants' actions.

The Seventh Circuit also reversed the district court's finding that Hope had standing to sue as a representative of its members. The Supreme Court had declared in *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975), that in order to establish standing in a representative capacity, an organization must allege that one or more of its members is suffering a real or threatened injury such that the member or members would have standing independently. *See also Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *International Union v. Johnson*, 674 F.2d 1195, 1200 (7th Cir.1982). Following this standard, the Seventh Circuit held that the individual plaintiffs did not have standing in their own right, and that Hope did not have standing in a representative capacity as a result. *Hope, Inc.*, 738 F.2d at 814. In the present case, while Hope made a reference in the complaint to injury to its clients there is no indication that the two

individual plaintiffs are clients of Hope such that standing in a representative capacity could be maintained. Nor is there a particular allegation of specific injury to any other clients or members of Hope.

In applying the standards set forth by the Supreme Court and the Seventh Circuit in this area, we cannot uphold Hope's standing in the present case. Accordingly, we grant defendants' motion to dismiss Hope.

### B. *Sufficiency of the Pleadings*

■ Defendants' second ground for dismissal is based on a contention that the allegations in the complaint are merely conclusions and should be stricken from the pleadings as without merit. It is elementary to most practitioners that pleadings in federal court need only comply with the "notice pleading" standard. Notice pleading means simply that in order to state a claim for relief, the plaintiff need only notify the defendant of the theory behind the claims alleged and the basic grounds which support those claims. *See Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Maclin v. Paulson,* 627 F.2d 83, 86 (7th Cir.1980). Fed.R.Civ.P. 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. That the plaintiffs in the present case have met these requirements is apparent from even a cursory reading of the complaint. In Paragraphs Nine and Ten of the complaint, plaintiffs have set out the type of conduct alleged, the persons involved and the dates of the alleged incidents leading to the discrimination claims. Defendants here clearly have fair notice of the claims filed against them. Their motion is meritless. Their efforts and resources would be more wisely spent in establishing their defense.

### C. *Punitive Damages*

■ The defendants' third basis for their motion is an assertion that plaintiffs' plea for $100,000 in punitive damages should not be allowed since provisions of the Fair Housing Act limit such relief to $1,000. 42 U.S.C. § 3612(c) (1982). However, plaintiffs bring this suit not only under the Fair Housing Act, but also under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1982 (1982), which has no limit on recovery for punitive damages. Where a plaintiff brings suit under both statutes in conjunction with the same defendant, the limitation on punitive damages does not apply. *Phillips v. Hunter Trails Community Association,* 685 F.2d 184, 191 (7th Cir.1982).

Defendants are also mistaken in asserting that plaintiffs have failed to plead malice or willful and wanton misconduct as a prerequisite to the punitive damages claim. In Paragraph 12 of their complaint, plaintiffs alleged that the defendants "acted intentionally and maliciously and were guilty of willful and wanton disregard for the rights and feelings of plaintiffs." Without further discussion, we disagree with defendants on this ground.

### III. *Rule 11 Sanctions*

■ In their response to the defendants' present motion, the plaintiffs have requested this Court to impose sanctions on the defendants for their assertedly frivolous motion. Since we have granted one of the defendants' three claims, we cannot agree that "[n]ot one of the arguments presented ... is warranted by existing law or by a good faith argument for the reversal, modification or extension of existing law." Plaintiffs' Response to Defendants' Motion to Strike and Dismiss Complaint at 5. And, while we agree that the other two claims by the defendant are unfounded, we decline to exercise our discretion in imposing sanctions against the defendants pursuant to Fed.R.Civ.P. 11.[8]

---

**8.** While we decline to impose formal sanctions, we do wish to address language used in defendants' reply memorandum, which reads in part:
   In conclusion, Defendant notes that plaintiff has termed defendants' Motion to Strike as frivolous, the [sic] only thing frivolous here is

plaintiffs' assertions that plaintiff, Lonnie Williams, was rented to even though he was black and refused continued rental because he is black. *Maybe, Lonnie Williams performed some black magic.*

## IV. *Conclusion*

The defendants' motion to dismiss plaintiff Hope Fair Housing Center from the complaint is hereby granted. Defendants' motions are denied in all other respects. Plaintiffs' motion for the imposition of Rule 11 sanctions is denied. It is so ordered.

Defendants' attempts at humor are both inappropriate and unhelpful in resolving this controversy. In our view, racial discrimination is a serious subject deserving serious treatment.