UNITED STATES of America For the Use of ARGYLE CUT STONE CO., INC., an Illinois Corporation, Plaintiff,

v.

PASCHEN CONTRACTORS, INC., a Delaware Corporation; Gust K. Newberg, Inc., an Illinois Corporation; Paschen/Newberg Joint Venture, a Joint Venture; Thorlief Larsen & Son, Inc., an Illinois Corporation; the Aetna Casualty & Surety Company, an Insurance Corporation; Hartford Fire Insurance Company; and the United States of America, Veterans Administration, Defendants.

No. 86 C 4495.

United States District Court, N.D. Illinois, E.D.

Jan. 6, 1987.

Anthony Campanale, Edward Boraz, Landesman & Schwartz, Chicago, Ill., for plaintiff.

Eileen M. Marutsky, Asst. U.S. Atty., Chicago, Ill., Kirk L. Miller, O'Halloran Lively & Walker, Northbrook, Ill., Eric A. Oesterle, Sonnenschein Carlin Nath & Rosenthal, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff United States of America, for the use of Argyle Cut Stone, Inc. ("Argyle") has brought this action against several defendants asserting causes of actions under the Miller Act, 40 U.S.C. §§ 270a–270d, and several pendant state law claims. Currently before the Court is a motion to dismiss under Fed.R.Civ.P. 12(b)(6) Counts VII, IX and X of the amended complaint by pendant party defendant Thorlief Larsen & Son, Inc. ("Thorlief"). For the reasons

stated below, we grant that motion in part and deny that motion in part.

### Facts [1]

Argyle's claims against Thorlief are just a few of the claims Argyle asserts in this action which originated out of a federal construction project. Defendants Paschen Contractors, Inc. ("Paschen") and Gust K. Newberg, Inc. ("Newberg") as Paschen/Newberg Joint Venture ("Joint Venture") were the prime contractors for the United States for the building of a veterans administration hospital in Chicago, Illinois. Argyle variously characterizes Thorlief as a general contractor or prime contractor on that same project.

With respect to its claims against Thorlief, Argyle maintains that it provided labor and material to the job site at first in reliance upon statements made by Thorlief, but later on the basis of an alleged agreement between the parties. In support of its claim that an agreement existed between the parties, Argyle appended a one-page paper dated September 24, 1985.[2] The paper appears to be payment schedule for labor and materials supplied by Argyle to the site. It is signed by four individuals, but there is no indication as to who the individuals represent, other than the initials TLS, which could refer to Thorlief, Larsen and Sons. Argyle has also appended nineteen delivery receipts as alleging the terms of the agreement between the parties.[3]

Argyle alleges that it provided the labor and material required by the parties' agreement and was not notified by Thorlief during its course of performance that it had provided nonconforming material or labor. Also, Argyle alleges that Thorlief, while in control of the construction site, accepted all labor and materials, but refused to pay Argyle. Argyle contends that it is due $55,013.78 for labor and materials provided to the site. Argyle further alleges that it believes that it was because of cost overruns and a slim profit margin by Thorlief and not because Argyle's materials or labor were nonconforming, that Thorlief refused to pay.

### Motion to Dismiss

Thorlief has raised a number of issues as to the sufficiency of Argyle's counts, but has also requested in the alternative that

1. As a motion to dismiss under Fed.R.Civ.P. 12(b)(6), we take all allegations of the complaint to be true and view them, as well as all reasonable inferences therefrom, in the light most favorable to the plaintiff. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). Furthermore, the motion to dismiss should only be granted if it appears beyond a doubt that plaintiff can prove no set of facts which would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

2. The paper states the following:
   These items were discussed [at] a meeting Dated 9/24/85.
   Argyle Cut Stone [at] 9/24/85
   Has 60,300.80 Due.
   Argyle requires $50,000. To continue work starting 9/30/85.
   All work completed—delivered to site 9/24/85 to 10/20/85 would be paid for between 11/20/85 and 11/25/85, If color and workmanship are accepted by the V.A.
   All work completed and Delivered to site between 10/20/85 and 11/20/85 would be paid for between 12/20/85 and 12/25/85, If color and workmanship are acceptable by the V.A. 10% Retainer Paid when VA Accepts Job. TLS should check for damage when unloading limestone trucks.

   [signature—unreadable]
   [signature—unreadable]
   [signature—Mark Larsen—apparently]
   [signature—Ed Rechel—apparently]

3. Each of the delivery receipts are from "Argyle Cut Stone Co." Eight of the receipts are addressed to "Rechel Stone Co., Thorl[ei/ie]f Larsen & Son." One of the receipts is addressed only to "Rechel Stone Co.," but was signed as received by the same signature as those receipts addressed to Rechel and Thorlief, "abdul." Four of the receipts are addressed only to "T. Larsen." The final six receipts are addressed only to the "V.A. Hospital." Of the receipts addressed only to the VA Hospital, three are signed as received by "abdul," one by a "Ray Frank" who also signed one of the T. Larsen receipts, one is signed, apparently, by the same person who was the first signatory on the one page paper, and one has a name which we cannot make out.

   The receipts are all on the same standard form from Argyle Cut Stone. The form has two columns each for "No. of PCS." and "PC. Number." Each receipt has various numbers filled in the columns. The dates on the receipts run from 6/20/85 to 1/23/86.

we strike Argyle's claims for attorneys' fees under each of its counts against Thorlief. We will address the motion to strike the attorneys' fees first.[4]

The American rule governing the award of attorneys' fees in federal courts is that "attorneys' fees are not recoverable in the absence of a statute or enforceable contract providing therefor." *F.D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1973) (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967)).

■ Argyle appears to contend that because it has brought Miller Act claims against the other defendants, that the federal common law as to attorneys' fees governs its pendant state law claims against Thorlief. The Miller Act itself does not provide for attorneys' fees. However, the federal common law of attorneys' fees applies to Miller Act claims. *United States ex rel. Garrett v. Midwest Construction Co.*, 619 F.2d 349, 352 (5th Cir.1980), and under federal common law there are exceptions to the general American rule.[5] Yet, Argyle has no federal claim against Thorlief. Argyle's claims against Thorlief are present before this Court by way of pendant party jurisdiction. Argyle has asserted four state law claims against Thorlief over which this Court has jurisdiction, de-

spite the lack of diversity because the claims arose out of the same factual situation as Argyle's claims against the other defendants under the Miller Act. Even if Argyle were successful on its Miller Act claims and also recovered attorneys' fees under the federal common law, it could still not recover attorneys' fees under the state law claims, *cf. Clark v. City of Chicago*, 595 F.Supp. 482, 488 (N.D.Ill.1984), unless the substantive law of Illinois so provided, because it is the state substantive law which governs pendant claims brought in conjunction with Miller Act cases. *Miller Equipment Co. v. Colonial Steel & Iron Co.*, 383 F.2d 669 (4th Cir.), *cert. denied*, 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1967). Under Illinois law, attorneys' fees and the ordinary expenses of litigation are not allowable to the successful party absent a statute or contractual agreement. *Michaels v. Michaels*, 767 F.2d 1185, 1205 (7th Cir.), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1985) (citing *Kerns v. Engelke*, 76 Ill.2d 154, 166–67, 28 Ill.Dec. 500, 506, 390 N.E.2d 859, 865 (1979); *Oazi v. Ismail*, 50 Ill.App.3d 271, 273, 7 Ill.Dec. 434, 436, 364 N.E.2d 595, 597 (1977)).

■ The alleged contract in this case does not provide for attorneys' fees, nor does there appear to be any applicable Illinois statute which would award attorneys' fees in this situation.[6] Therefore, finding

---

**4.** A motion under Fed.R.Civ.P. 12(f) to strike a portion of the pleading is a drastic remedy and therefore granted only where the pleading contains matter which is redundant, immaterial, impertinent or scandalous. 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1382 (1969). The purpose of Rule 12(f) is to eliminate allegations which might cause prejudice at some later point or to streamline complex pleadings to make them more comprehensible and manageable. *Id.*

The grounds on which Thorlief seeks to strike Argyle's claim for attorney fees do not fall within any of the purposes of Rule 12(f), but more properly should be characterized as a motion to dismiss the claims for attorney fees under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**5.** The Supreme Court in *F.D. Rich Co. v. United States, Industrial Lumber Co.*, 417 U.S. 116, 130, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974), identifies two exceptions, the first applies when the

opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. The second exception, the common benefit exception, applies when a successful litigant has conferred a substantial benefit on a class of persons and the court's shifting of fees operates to spread the cost proportionately among the members of the benefitted class. *Id.*

**6.** The only statute which this Court has found which seems even remotely relevant is Ill.Rev. Stat. ch. 13 ¶ 13 (1985). This statute provides that "[w]henever a mechanic, artisan, miner, laborer, servant or employee brings an action for wages earned and due and owing according to the terms of the employment ... the court shall allow the plaintiff a reasonable attorney fee...." Because this is an action by an Illinois corporation to recover amounts owed it for labor and materials provided to a construction site, and not an action by an individual employee seeking to recover wages, we do not find this statute pertinent.

that Argyle has failed to state a claim upon which relief can be granted for attorneys' fees, under the state law counts, we grant Thorlief's motion to dismiss the claims for attorneys' fees.

### Count VII: Breach of Contract

■ Thorlief urges this Court to dismiss Argyle's claim for breach of contract on the grounds that the one-page paper Argyle set forth as Exhibit B is too indefinite to be enforced. But this argument misses the mark. It is elementary contract law that an agreement too indefinite and vague for enforcement may be made definite by performance. *Smithereen Co. v. Renfroe*, 325 Ill.App. 229, 59 N.E.2d 545 (1945); *Arthur Rubloff & Co. v. Leaf*, 347 Ill.App. 191, 106 N.E.2d 735, 737 (1952), and that performance of a contract takes it out of the statute of frauds. *Pearce v. Pearce*, 184 Ill. 289, 56 N.E. 311 (1859). Therefore, where plaintiff has alleged full performance of the contract, indefiniteness will not bar an action.[7]

### Count VIII: Unjust Enrichment—Quantum Meruit—Detrimental Reliance

Thorlief requests that this Court strike Argyle's claim for unjust enrichment as failing to comply with Fed.R.Civ.P. 8(e)(i) [sic] and 9(f), with respect to the "assertions" Argyle claims it relied upon in providing labor and material to the job site. In the alternative, Thorlief requests that Argyle file a more definite statement as to its allegations.

■ Rule 8(e)(1) provides that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required." Rule 9(f) provides that "[f]or the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments

of a material matter." Argyle's pleading is clearly sufficient under these rules. "It is elementary to most practitioners that pleadings in federal court need only comply with the notice pleading standard. Notice pleading means simply that in order to state a claim for relief, the plaintiff need only notify the defendant of the theory behind the claims alleged and the basic grounds which support those claims." *Williams v. Adams*, 625 F.Supp. 256, 262 (N.D.Ill.1985). Fed.R.Civ.P. 8(a) requires Argyle to set forth only a short and plain statement of its claim. It is clear from the complaint that Argyle has met this standard. Paragraph 7 of Count VIII states that Thorlief made assertions upon which Argyle relied. As to what each assertion was, and when each assertion was made, Thorlief can use discovery to find out. The Federal Rules of Civil Procedure balances notice pleading with very wide and liberal discovery provisions. Additionally, Thorlief's citation to Rule 9 is inapposite, as that rule refers only to allegations that plaintiff does make regarding time and place. "It should be perfectly clear that Rule 9(f) does not require the pleader to set out specific allegations of time and place; it merely states the significance of these allegations when they are actually interposed." 5 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1309 (1969). Occasionally, a specific cause of action would require that allegations of time and place be made, such as a personal injury suit. A cause of action for quantum meruit or unjust enrichment, however, is not such an action. Therefore, finding that plaintiff has adequately met the 8(a) standard and that Thorlief's reference to Rule 9(f) is misplaced, we deny its motion to dismiss Argyle's Count VIII.[8]

■ Thorlief in the alternative requests that Argyle files a more definite statement

---

7. Where the contract involved in this action was partly for the sale of goods, the Uniform Commercial Code may arguably apply. Because we lack sufficient facts at this stage to decide, we principally rely on common law. It would appear, however, that the UCC is in accord with our holding. *See* Ill.Rev.Stat. ch. 26 ¶¶ 2–204, 2–201(3)(c).

8. It is clear that Argyle cannot recover on both its quantum meruit claim and its contract claim. *Landau & Cleary, Ltd. v. Hribar Trucking, Inc.*, 807 F.2d 91 (7th Cir.1986). Therefore, if Argyle is successful in recovering on its breach of contract claim, then we would at that time dismiss its claim for quantum meruit or unjust enrichment.

under Fed.R.Civ.P. 12(e). Rule 12(e) motions are generally disfavored. Courts grant such motions only when the pleading is so unintelligible that the movant cannot draft a responsive pleading, *Brock v. Local 512, Transport Workers Union of America,* slip op. No. 85 C 5848 (N.D.Ill. Sept. 27, 1985); and it is clear that Rule 12(e) motions are not substitutes for discovery. *See, e.g., Garza v. Chicago Health Clubs, Inc.,* 329 F.Supp. 936, 942 (N.D.Ill.1971); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1376 at 737–741 (1969). While we do not want to make it impossible for the defendant to respond to the complaint, we also do not want to conduct discovery via the pleading stage. We find that Argyle's pleading that: "Commencing on or about June 20, 1985, in reliance upon assertions made by Thorlief regarding materials, labor and payment therefor, Argyle began providing labor and material to the Site consistent with Thorlief's requirements," is sufficiently detailed to put Thorlief on notice of Argyle's claim for unjust enrichment or promissory estoppel.

Accordingly, Thorlief's request for a more definite statement is denied.

### Count IX: Constructive Trust

Argyle in its Count IX claims that a constructive trust should be imposed upon the assets Thorlief received "as a result of this project" as trustee from Argyle. In support of its claim for a constructive trust, Argyle makes the following allegations:

> As the prime or general contractor on a federal project, there was imposed upon THORLIEF the burden to protect material men and subcontractors and assure their payment.
>
> ARGYLE is a material man or subcontractor with the purview of the Miller Act.
>
> By virtue of the relationship between ARGYLE AND THORLIEF and the application of the Miller Act, THORLIEF owed to Argyle the utmost in good faith in its dealings.
>
> ARGYLE placed confidence in and relied upon THORLIEF to comply with the

terms of its agreement and those of the Miller Act until after March of 1986, when THORLIEF'S breach of fiduciary duty became apparent.

> THORLIEF breached its duty to ARGYLE and violated the relationship of trust and confidence by failing to pay ARGYLE and by securing advantage over it by misleading ARGYLE to its prejudice by failing and refusing to pay ARGYLE its due.

■ In its memorandum of law, Argyle dismisses Thorlief's citation of Illinois law on the issue of what is necessary to justify the imposition of a constructive trust. "Defendant's agreement [sic] under Illinois law with respect to the existence of a fiduciary relationship is inapposite [because] the present action is controlled by the Miller Act, 40 U.S.C. 270(A), et seq." In support of this proposition, Argyle cites two cases. First, it cites *Moyer v. United States,* 206 F.2d 57 (4th Cir.1953), and *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). Neither of these cases discusses nor concerns the imposition of a constructive trust or the existence of a fiduciary relationship. Nor has this Court been able to locate any case that has held that the Miller Act creates as a matter of law a fiduciary relationship between a "general contractor or a prime contractor" and a "materialman or subcontractor" on a federal construction project. If we are being asked to recognize this proposition as a matter of first impression, which we note Argyle did not specifically urge, we decline to do so for the following reasons.

The Supreme Court in *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tompkins,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944), indicated that we are not to interpret the Miller Act in a manner that would increase the liability under it:

> The Miller Act, like the Heard Act, is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public

projects.... But such a salutary policy does not justify ignoring plain words of limitations and imposing wholesale liability on payment bonds.

*Id.* (citations omitted). For this Court to construe the Miller Act to create a fiduciary relationship would be to impose liability in excess of specific limitations in the Act. Not only would prime contractors be liable on the payment bonds, but liability based on the Miller Act would reach way beyond the payment bond and create common law liability. Argyle has given us no policy arguments to justify such a wholesale extension of Miller Act liability, and we cannot conceive of any either.

The Miller Act requires a United States government contractor to post a surety bond for the protection of all persons supplying labor and material in the prosecution of the work provided for in the parties' contract. *New England Explosives v. Maine Ledge Blasting Specialist, Inc.,* 542 F.Supp. 1343 (D.Maine 1982). The purpose of the Act is to provide persons supplying labor or materials for a federal construction project with a suitable alternative to their state-law mechanics' lien remedy, because a mechanics' lien cannot attach to federal property. *J.W. Bateson Co. v. United States ex rel. Board of Trustees,* 434 U.S. 586–89, 98 S.Ct. 873, 875, 55 L.Ed.2d 50 (1978). Nowhere in the body of the statute is there any indication that Congress intended to define the relationship between the various parties as that of fiduciary relationship. We believe that had Congress so intended it would have made such a relationship explicit.[9]

Having concluded that the Miller Act itself does not create a fiduciary relationship between the parties, we must look to state law to determine whether Argyle has alleged enough facts to show that a fiduciary relationship existed between it and Thorlief sufficient to support a constructive trust.

A constructive trust is a restitutionary remedy which arises by operation of law and is imposed by a court on equitable and public policy grounds in situations where a person holding money or property would profit by a wrong or be unjustly enriched at the expense of another if he were permitted to retain it. *People ex rel. Daley v. Warren Motors, Inc.,* 136 Ill.App.3d 505, 91 Ill.Dec. 145, 483 N.E.2d 427 (1985). The purpose of such a trust is to compel the party unfairly holding the money or property to convey it to whom it just belongs. *Id.*

Under Illinois law constructive trusts are divided into two general groups, one where actual fraud exists and the other, which applies in the instant case, exists where there is a confidential or fiduciary relationship. *Steinmetz v. Kern,* 375 Ill. 616, 32 N.E.2d 151 (1941); *David v. Russo,* 91 Ill. App.3d 1023, 47 Ill.Dec. 526, 415 N.E.2d 531, 536 (1980). In general, a fiduciary or confidential relationship exists where trust and confidence are reposed by one person in another, who as a result gains an influence and superiority over the other. *Steinmetz,* 375 Ill. 616, 32 N.E.2d 151. Where by reason of friendship, agency, business association and experience, a high degree of trust is reposed, a confidential relationship may be said to exist; and the mere existence of such a connection prohibits the one trusted from seeking or obtaining any selfish benefit for himself during the course of the relationship and affords a basis for imposing a constructive trust. *Id.* Fiduciary relationships which do not exist as a matter of law must be proved by clear and convincing evidence in order to establish a basis for raising a constructive trust.

**9.** The only judicially developed equitable doctrine that appears to be remotely relevant to Argyle's claim for a fiduciary relationship is the misapplication doctrine. The misapplication doctrine is an affirmative defense to a supplier's claim against the payment bond under the Miller Act. *United States ex rel. General Electric v. Wiring, Inc.,* 646 F.2d 1037, 1042 (5th Cir.1981). If a supplier receives funds from a subcontractor knowing that the source of those funds is the general contractor on a government project, the supplier is obligated to apply those funds to the government project account and not to any old debts that it already had. *Id.* at 1040. Once a supplier has knowingly misapplied the funds, the misapplied funds must be reallocated to the proper accounts. *Id.*

This equitable doctrine does not apply here. Argyle does not seek to recover amounts on Thorlief's bond, but to recover amounts independently from Thorlief directly.

*Cunningham v. Cunningham,* 20 Ill.2d 500, 504, 170 N.E.2d 547, 550 (1960); *Lux v. Lelija,* 14 Ill.2d 540, 546, 152 N.E.2d 853, 857 (1958); *LaBarbera v. LaBarbera,* 116 Ill.App.3d 959, 72 Ill.Dec. 431, 452 N.E.2d 684 (1983).

■ Factors to be taken into consideration are degree of kinship, if any, disparity in age, health, mental condition, education and business experience between the parties, and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to the other and reposed faith and confidence in him. *Cunningham,* 20 Ill.2d at 504, 170 N.E.2d 547, 550. Other factors to consider when determining whether fiduciary relationships exists includes extent to which alleged servient party entrusts handling of business and financial affairs and reposes faith and confidence in dominant party. *Central States Joint Board v. Continental Assurance Co.,* 117 Ill.App.3d 600, 73 Ill.Dec. 107, 453 N.E.2d 932 (1983). In order to establish a fiduciary relationship, the trust and confidence allegedly reposed by the first party must actually be accepted by the second party. *DeWitt County Public Building Commission v. County of DeWitt,* 128 Ill.App.3d 11, 83 Ill.Dec. 82, 469 N.E.2d 689 (1984); *Bank Computer Network Corp. v. Continental Illinois National Bank and Trust Co. of Chicago,* 110 Ill.App.3d 492, 66 Ill.Dec. 160, 442 N.E.2d 586 (1982); *People ex rel. Barrett v. Central Republic Trust Co.,* 300 Ill.App. 297, 20 N.E.2d 999 (1939).

A review of Argyle's allegations reveals a fatal defect. Argyle fails to allege that the confidence Argyle reposed upon Thorlief was ever accepted by Thorlief. Therefore, we find that Argyle has failed to allege the existence of a fiduciary relationship between itself and Thorlief sufficient to support the imposition of a constructive trust. Accordingly, we grant Thorlief's motion to dismiss Argyle's Count IX for a constructive trust.[10]

### Count X: Constructive Fraud

Constructive fraud is defined as any act, statement or omission which amounts to positive fraud or which is construed as fraud by the courts because of its detrimental effect upon public interests and public or private confidences. *Sale v. Allstate Insurance, Inc. Co.,* 126 Ill.App.3d 905, 81 Ill.Dec. 901, 467 N.E.2d 1023 (1984). It requires neither actual dishonesty nor intent to deceive, being a breach of a legal or equitable duty which, irrespective of the moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others. *Id.* Constructive fraud is most frequently found in a breach of duty arising out of a fiduciary relationship and acts which may constitute fraud extend to every possible case in which a fiduciary relationship exists. *See Gary-Wheaton Bank v. Burt,* 104 Ill.App.3d 767, 60 Ill. Dec. 518, 433 N.E.2d 315 (1982).

Because we have already found that Argyle's failure to allege acceptance by Thorlief of its trust was fatal to Argyle's claim that a fiduciary relationship existed, we find that it is also fatal to Argyle's claim for constructive fraud. In order for Argyle's count for constructive fraud to survive, Argyle must establish the existence of a fiduciary relationship from which the constructive fraud arose. Having failed to properly allege such a relationship, we find that Argyle's count for constructive fraud must fail. Therefore, we grant Thorlief's motion to dismiss Count X for constructive fraud.

———

In conclusion, we have granted Thorlief's motion to dismiss the claim for attorneys' fees on Argyle's state law counts against Thorlief, Argyle's counts for a constructive trust and its count for constructive fraud because Argyle failed to allege that Thor-

10. Because we find that Argyle's failure to allege acceptance by Thorlief is fatal to its count for a constructive trust, we do not address the issue of whether the mere allegation of the existence of a fiduciary relationship without stating supporting facts is sufficient to withstand a motion to dismiss. It would appear that such an allegation is a mere legal conclusion and not sufficient to withstand a motion to dismiss. *See Aron v. Dausch,* 313 Ill.App. 524, 40 N.E.2d 805, 180 (1942).

lief accepted Argyle's imposition of trust. Finally, we deny Thorlief's motion to dismiss Argyle's breach of contract claim and its alternative claim for quantum meruit recovery, finding that Argyle has stated sufficient facts to state a claim upon which relief can be granted. It is so ordered.