TERADYNE, INC., a Massachusetts corporation, Plaintiff,

v.

CLEAR COMMUNICATIONS CORP., a Delaware Corporation, Robert Copithorne, Charles H. Studee and Kris Iyer, Defendants.

No. 88 C 6750.

United States District Court,
N.D. Illinois, E.D.

Feb. 9, 1989.

Edmund C. Case, David S. Godkin and Margaret A. Flanagan of Testa, Hurwitz & Thibeault, Boston, Mass., for Teradyne, Inc.

William A. Streff, Jr., Philip C. Swain and Nicole J. Klimisch of Kirkland & Ellis, Chicago, Ill., for Clear Communications Corp., et al.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Teradyne invokes the Illinois Trade Secrets Act (Act) in this diversity suit against Clear. The Act, in law for little more than a year, has yet to be construed in a reported Illinois decision. Clear says the complaint's claims are too slight to require response and, if this is not so, they must at least be made more definite before Clear can respond. Teradyne disagrees. There are opinions in which each side can find comfort.

Clear says legal conclusions are not enough, and some facts must be stated to support claims for relief. *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984); *Pete Thoesen Tractor v. City of Chicago*, 101 F.R.D. 734, 735 (N.D. Ill.1984) (complaint must be more than "a naked conclusion without any support in the complaint's substantive allegations. To be sure, Rules ... allow notice pleading but even their low threshold calls for facts."). *Hornung v. Village of Park Forest*, 634 F.Supp. 540, 547 (N.D.Ill.1986) ("vague, conclusory allegations [are] insufficient to provide the necessary 'fair notice to the defendant' ").

Teradyne notes that *Sutliff,* cited by Clear, in turn approves *Davis v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D.Haw.1953), which said a complaint need only "set out sufficient factual matter to outline the elements of [a] cause of action or claim, proof of which is essential to relief." It sets out several cases showing that evidentiary matter need not appear in complaints for, under notice pleading, discovery will disclose more precisely the basis of a claim. *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80

(1957); *American Nurses Association v. Illinois,* 783 F.2d 716, 723 (7th Cir.1986). As for a more definite statement, it should be granted only when drafting a responsive pleading is impossible. *McDougall v. Donovan,* 552 F.Supp. 1206, 1208 (N.D.Ill.1982); *Runyan v. United Brotherhood of Carpenters,* 566 F.Supp. 600, 608 (D.Colo.1983) (in light of discovery there is no need for more definite statement "unless the pleading is so unintelligible that defendants do not understand the allegation[s].")

■ There is no real theoretical conflict among the cases if one construes them to mean that facts supporting the claim are required but that these facts need not be alleged in substantial detail. The rule that a more definite statement should not be granted unless response is impossible or unintelligible to the point of incomprehensibility is found in the cases, but, taken literally, cannot be the law. Almost any complaint can be answered. A vague and conclusory complaint may lead to a vague and conclusory answer—a frequent occurrence in federal cases. Contradictory assertions can be answered by agreeing with the truth of one assertion and denying the others. Complaints unlimited as to place, time or person may be answered in kind. In deciding whether to order a more definite statement it is best to look at what sort of *answer* defendant might make to the complaint and ask if such an answer, put with the complaint, would serve to advance the course of the litigation. If, after complaint and answer are filed, the court would have no clear notion of the essence of the case then a more definite statement is probably needed.

It is true that a policy favoring more definite statements may impair the principle of notice pleading. But notice pleading has always been a protean concept defined less by what it is than by what it is not—code or common law pleading. *See* C. Wright & A. Miller, *Federal Practice and Procedure* Sec. 1202 (1969) (and authorities cited there). The 1983 amendment to Rule 11 (that filing ill-founded pleadings be penalized) suggests that notice pleading is not always sufficient. It may be implied from the Rule's reasonable inquiry requirement that the pleading must be sufficiently specific to enable a judge to determine whether it is well founded in law and fact. Moreover, the formula of notice pleading followed by discovery is now questioned on the ground that its benefits often fall quite short of its costs. A more definite statement of a claim may serve to effectuate Rule 11 and reduce discovery costs. This too must inform the decision where to grant a motion for a more definite statement.

Teradyne's complaint is this. Their telecommunications division located in Deerfield, Illinois, designs and makes automatic test equipment for telephone systems. Robert Capithorne worked in the division for thirteen years, becoming its "second most senior employee", at times responsible for engineering and marketing all its products. Charles Studee, a hardware engineer, and Kris Iyer, a software engineer, both worked over eleven years in the division. All signed employment statements never to divulge to unauthorized persons anywhere any confidential information concerning Teradyne's business, technology and activities—the agreement was a condition of employment. In September 1987, Capithorne left Teradyne—half a year later (March 1988) he formed Clear to engage in the telephone system testing business. The market for Clear is to be private networks, to wit, private corporations and enterprises that buy telecommunications equipment. Teradyne's market is public networks, owned by telephone companies and common carriers. Before Capithorne left Teradyne he knew it was preparing to sell to private networks, and he had access to its plans to enter that market. Teradyne alleges upon information and belief that Clear and Capithorne have hired only those who worked at Teradyne. Capithorne did hire Studee and Iyer away from Teradyne in March 1988. Between the three of them they know in detail the technology and trade secrets of the division for which they worked, "including but not limited to ... techniques [for] test measurements, special user interface, report generation ... and ... interfacing test equip-

ment to switches, all of which can be used in ... private network testing...."

Studee spoke regularly with the person (Herron) primarily charged with Teradyne's private network testing plans. Herron provided information about these plans to Studee. One week before Studee resigned he met with Herron and secured "a detailed summary and overview of Teradyne's engineering and marketing plans, product strategy and technology" for private network testing.

Teradyne's technology, trade secrets, confidential and proprietary information (all trade secrets within the meaning of the Act) were acquired "at enormous expense, time and energy"—it has taken reasonable steps to protect it and will suffer irreparable harm for which it lacks an adequate legal remedy if these assets are used by Clear.

Finally, Teradyne says there "is a high degree of probability of inevitable and immediate disclosure and use of Teradyne's trade secrets [by all defendants] in Clear's private network testing business,"—which constitutes a threat to misappropriate trade secrets—an act enjoinable under the Illinois law. So Teradyne asks that Clear (1) be enjoined from "disclosing, using, copying or ... exploiting" its secrets or inducing other Teradyne employees to breach their non-disclosure agreements; (2) pay damages, costs and attorneys fees; and (3) be subjected to a constructive trust in Teradyne's favor on profits from technology developed by using Teradyne's secrets.

Is the complaint bad because it fails to identify the trade secrets that might be misappropriated? Is it bad because it fails to allege facts to support its claim that defendants are likely to harm Teradyne?

The questions intertwine in one important respect. If the complaint set forth precisely the confidences it sought to protect it would be simple for defendants to respond whether they intended to misappropriate them no matter how few facts were alleged to support the misappropriation claim. If the complaint set forth precisely the manner in which misappropriation was to occur, it would be possible,

ordinarily, for defendants to respond even though the exact secrets to be misappropriated are not known. The complaint here is inexact on both issues, and this may well mean that we will find, after analysis, that a more definite statement is required.

There may be no law on whether a complaint must list trade secrets or confidences to be protected. True, it must be done at some point prior to trial, *AMP, Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir.1987), but no case cited by defendants says it must be done in the complaint. In *Rockwell Graphics v. DEV*, 3 U.S.P.Q.2d 1545, 1549 (N.D.Ill.1987) [1987 WL 6862], the Court indicated that a general list of information relating to the design and manufacture of printing presses accompanied by allegations of value and of efforts to maintain secrecy was an adequate allegation in a complaint. But that case is off the center of this case (and Teradyne does not cite it as direct precedent) because the argument there was that the security measures had to be set set out in some detail as well as the value of the secrets these measures would protect.

Requiring a detailed list of each trade secret to appear in the complaint seems an unnecessary departure from the rule that statements be "short and plain." Rule 8, Fed.R.Civ.P. The broad range of protectible information alleged by Teradyne is not inconsistent with the broad range of information the Illinois General Assembly sought to protect:

"Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

356

(Ill.Rev.Stat. ch. 140, sec. 352(d) (1988).)

Here the nature of the business is alleged to require the use of technology developed with the services of engineers from two separate disciplines, and the individual defendants were allegedly long-term employees of plaintiff. There is no reason to require detailed descriptions in the complaint of each of the secrets Teradyne fears will be misused. In the context of this case it would be just as simple for the defendants to list in their answer (under seal and protective order if they wish) the technology and information they intend to use in their business and then deny it is protectible or misappropriated. Defendants' argument is really better directed to the question of the nature, order and timing of discovery.

All this is said upon the premise that only the Illinois statute is here invoked. Defendants did sign an agreement never to divulge confidential information (whose scope may be broader than that protected by statute), but its enforcement is not specifically requested in the complaint. This court assumes this was done in light of Illinois law which denies enforcement to such agreements when they are unlimited in duration, geography or certain other respects. *See AMP, Inc, supra,* at 1202 (stating Illinois law). Massachusetts law is quite similar. *Marine Contractors v. Hurley,* 365 Mass. 280, 310 N.E.2d 915 (1974); *All–Stainless, Inc. v. Colby,* 364 Mass. 773, 308 N.E.2d 481 (1974).

Now the question is whether Teradyne has properly alleged that defendants will harm it. Teradyne says defendants are in a position to misappropriate trade secrets because they know them and are in the same kind of business as Teradyne. Clear and Capithorne lured experts from Teradyne. Thus there "is a high degree of probability of inevitable and immediate … use of Teradyne's trade secrets" by defendants and this constitutes threatened misappropriation. Threatened misappropriation can be enjoined under the Illinois law.

Clear argues if Teradyne is right that these facts constitute a threat of misappropriation, then Capithorne, Studee and Iyer could never work in the same business because they would always be in a position to use Teradyne's trade secrets. The argument is obviously overstated; presumably after the passage of time these men would no longer possess confidential information of value. But the law does permit, or perhaps encourage, employees to take with them "general skills and knowledge acquired during his tenure with his former employer", *AMP Inc, supra,* 823 F.2d at 1202; *E.W. Bliss Co. v. Struthers–Dunn, Inc.,* 408 F.2d 1108, 1112–13 (8th Cir.1969) (protection of trade secrets should not render employees substantially unemployable in the field of their experience).

There is room in the decided cases to countenance the possibility that an employee may only acquire knowledge and skills so specialized and unique to the employer that future work in that field is precluded. There is no allegation here that would invoke this possibility. It may occur that the only way to engage in an enterprise is to use protected techniques and information—simply because there is no other way to execute the necessary tasks. *See Allis–Chalmers v. Continental Aviation,* 255 F.Supp. 645 (E.D.Mich.1966). In *Standard Brands v. Zumpe,* 264 F.Supp. 254, 269 (E.D.La.1967) Judge Rubin noted:

An employer seeking injunctive protection for his trade secrets prior to their disclosure generally alleges either that the ex-employee actually intends to divulge the secrets, or that he will inevitably do so, whether consciously or not, because of the type of work in which he will be involved, or that there is a substantial probability of disclosure.

■ Here there is no allegation that defendants have in fact threatened to use Teradyne's secrets or that they will inevitably do so. An allegation that the defendants said they would use secrets or disavowed their confidentiality agreements would serve this purpose. An allegation that Clear could not operate without Teradyne's secrets because Teradyne's secret technology is the only one that will work would suffice though more technical facts

may be necessarily included in such a pleading. The defendants' claimed acts, working for Teradyne, knowing its business, leaving its business, hiring employees from Teradyne and entering the same field (though in a market not yet serviced by Teradyne) do not state a claim of threatened misappropriation. All that is alleged, at bottom, is that defendants could misuse plaintiff's secrets, and plaintiffs fear they will. This is not enough. It may be that little more is needed, but falling a little short is still falling short.

Whether the complaint is specific enough to permit appropriate Rule 11 sanctions is not of particular relevance here. Clear says the action was brought "to drive [it] out of business before it can develop and market its first product." If Rule 11 is to be applicable here it seems now the claim would be that the suit was filed for an improper purpose. This ground is applicable whether or not the complaint was well grounded in fact and law. *See Beeman v. Fiester*, 852 F.2d 206, 209 & n. 1 (7th Cir.1988); *Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429, 1436 (7th Cir.1987); *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987); *In re TCI Ltd.*, 769 F.2d 441, 445–46 (7th Cir.1985). *But see Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986); *Hudson v. Moore Business Forms, Inc.*, 827 F.2d 450, 453 (9th Cir.1987). Thus the purposes served by Rule 11 do not weigh here on the side of making the complaint more specific.

The complaint is dismissed, and plaintiff is given twenty-one days to replead in accordance with the views expressed in this opinion.