**BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, Plaintiff,**

v.

**ILLINOIS RANGE, INC., IRC Holding Corp., Irange, Inc., Edward Krakowiak, Edward Krysa and Donald Brokaw, Defendants.**

No. 98 C 8321.

United States District Court, N.D. Illinois, Eastern Division.

May 5, 1999.

## MEMORANDUM OPINION AND ORDER

DENLOW, United States Magistrate Judge.

This case raises the issue of whether a non-employer can be held liable under the Employees Retirement Income Security Act ("ERISA") for withdrawal liability when that party is alleged to have engaged in a transaction with a principal purpose of evading and avoiding withdrawal liability. The Court answers this question in the affirmative. The Board of Trustees of the Sheet Metal Workers' National Pension Fund ("Plaintiff" or "Fund") instituted this action against IRC Holding Corp., Illinois Range, Inc., I Range, Inc., Edward Krakowiak, Edward Krysa and Donald Brokaw (collectively "Defendants"), alleging violations of ERISA and additional state laws. Edward Krakowiak, Edward Krysa and Donald Brokaw (collectively "Individual Defendants") now bring a motion to dismiss Count II for failure to state a claim and Counts III and IV for lack of federal jurisdiction.[1] In the alternative, Individual Defendants move for a more definite statement. For the following reasons the Court holds that Plaintiff did state a legally sufficient claim against Individual Defendants in Count II and that the Court has supplemental jurisdiction over Counts III and IV. Consequently, the Court denies both motions.

## I. BACKGROUND FACTS

The following facts are taken from the complaint and are treated as true for purposes of this motion. As of November 1986, Individual Defendants owned IRC Holding which owned the stock of Illinois Range. In March of 1994, Illinois Range was valued at over $1 million. In October of 1994 Individual Defendants sold the stock of IRC Holding to a company called IRC Acquisition, which later changed its name to I Range. I Range executed a $2.5 million promissory note, secured by Illinois Range's assets and stock, in favor of the Individual Defendants which pro-

David S. Allen, Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, IL, Terence George Craig, Glenda Gouldman, Bruce Perlin, Sheet Metal Workers National, Alexandria, VA, for plaintiff.

Robert J. Trizna, Thomas Gregory Draths, Jeffrey Ray Rosenberg, Schuyler, Roche & Zwirner, Chicago, IL, for defendants.

---

1. One of the arguments in Individual Defendants' brief was that Count V, Plaintiff's claim for a constructive trust, should be dismissed because a constructive trust is a remedy, not a claim. Plaintiff agreed and voluntarily withdrew its constructive trust count. However, Plaintiff is free to argue that a constructive trust as a remedy in the event that it prevails on claims for which such a remedy would be appropriate. *Fujisawa Pharmaceutical Co. v. Kapoor*, 16 F.Supp.2d 941, 950 (N.D.Ill.1998).

vided that Krakowiak would remain a director of the corporation until the acquisition note was paid off. However, if Illinois Range was not profitable by at least $1 as of one year after the sale, the stock ownership would revert to the Individual Defendants. Following the stock sale and from late 1994 through early 1996, the Board of Directors of Illinois Range approved large dividends, totaling approximately $6.25 million, to its sole shareholder, IRC Holding, which in turn approved large dividends to its sole shareholder, I Range, which in turn approved payments of at least $788,073.29 to Individual Defendants in order to pay down the acquisition note financing the stock sale. In April of 1996, Individual Defendants declared that the purchasers of Illinois Range had defaulted on the stock purchase agreement. In September of 1996, Illinois Range assigned its assets for the benefit of creditors and ceased contributing to the Fund. The Fund determined that as of September 10, 1996 a complete withdrawal within the meaning of ERISA, 29 U.S.C. § 1381(b)(2), had been effected and this resulted in withdrawal liability in the amount of $2,273,699.86. As a result of the dividend distributions in 1994 through 1996, Illinois Range was rendered insolvent and unable to pay its withdrawal liability.

In December 1998, the Board of Trustees of the Sheet Metal Workers National Pension Fund filed the instant action against IRC Holding Corp., Illinois Range, Inc., and I Range, Inc., (collectively "Corporate Defendants") for withdrawal liability in Count I of the Complaint. Count I is not involved in the pending motion. The Fund also sued Individual Defendants, the former owners of Illinois Range, to set aside the stock sale and dividends and to collect withdrawal liability in Count II. The Fund claims illegal corporate distributions and fraudulent conveyances in Counts III and IV respectively.

## II. STANDARD OF REVIEW

In analyzing Plaintiff's complaint under Rule 12(b)(6), the court must accept as true the allegations in the complaint and the inferences that may be reasonably drawn from them. Fed.R.Civ.P. 12(b)(6); *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1993). A motion to dismiss may be granted only if the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## III. PLAINTIFF HAS STATED A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS IN COUNT II

Count II is based upon 29 U.S.C. § 1392(c), which provides that "if a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." Individual Defendants argue that Count II should be dismissed for failure to state a claim. Individual Defendants make this argument for two reasons: First, that Individual Defendants, shareholders, are not a liable party under the statute; second, that Plaintiffs failed to sufficiently allege that Individual Defendants acted with the principal purpose of evading and avoiding withdrawal liability. The Court concludes that Individual Defendants are liable parties under the statute and that Plaintiff did include sufficient allegations regarding the purpose with which Individual Defendants acted. Consequently, the Court denies Individual Defendants' motion to dismiss Count II.

### A. Individual Defendants are Liable Parties under ERISA

Plaintiff's complaint is a case of first impression in the Seventh Circuit in that it involves the question of whether a non-employer can be held liable for withdrawal liability under ERISA. Individual Defendants assert that they cannot be held responsible for Illinois Range's withdrawal liability because they are not employers under ERISA. They argue that 29 U.S.C. § 1381 makes it explicit that only an employer may be liable. The Court concludes that Defendants read the withdrawal liability imposed by ERISA too narrowly by relying solely on 29 U.S.C. § 1381.

It is true that withdrawal liability in the first instance is dictated by 29 U.S.C. § 1381(a), which provides that "[i]f an em-

ployer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability."[2] However, several other sections of ERISA impact the parties on whom withdrawal liability can be imposed. These include 29 U.S.C. § 1392(c) which provides "if a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction" and 29 U.S.C. § 1451(a)(1) which provides that "[a] plan fiduciary, employer, plan participant or beneficiary who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan or an employee participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief." The Court concludes that these three sections of ERISA should be read jointly and the term "any party" in 29 U.S.C. § 1451(a)(1) can include prior shareholders such as Individual Defendants.

■ Individual Defendants correctly point out that persons may not be subject to withdrawal liability simply because of their shareholder status.

> Courts routinely rebuff efforts to collect pension debts from managers and investors unless the officer or investor would be liable for the firm's other debts under state law-in other words, unless courts would "pierce the corporate veil" in light of the structure and operation of the particular firm.

*Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1193 (7th Cir.1989). The court in *Levit* relied on an interpretation of the statute by the Pension Benefit Guaranty Corp., which insures pension funds. "ERISA has no special rules regarding shareholder or officer liability. Accordingly, this issue is usually determined by State law which generally

provides that shareholders are not liable for the debts of a corporation." PBGC Opinion Letter 83–038 (Dec. 14, 1982), *quoted in Levit*, 874 F.2d at 1193. After citing the other circuits which refused to hold shareholders liable under ERISA when it would not be permitted by state law, the Seventh Circuit in *Levit* stated that "[i]t would take a compelling argument to persuade us to depart from an interpretation of the law adopted by a responsible agency and followed by so many courts." *Id.* at 1194.

■ However, the present case is not simply a case of attempting to hold shareholders responsible for § 1381 withdrawal liability for a corporation's obligations when a corporation has gone bust through no fault of the shareholders. In that the scope of potentially liable parties under ERISA does not begin and end with employers under 29 U.S.C. § 1381, Individual Defendants' analogy to *Levit* fails. The allegations in this case assert that it was an affirmative act of the shareholders that induced the withdrawal liability of the corporation and that act was motivated by the shareholders attempting to evade and avoid withdrawal liability. Under such circumstances this court holds that, as dictated by 29 U.S.C. § 1392 and 29 U.S.C. § 1451, liable parties are not limited to employers. This is supported by the holdings of several other cases. *See Connors v. Marontha Coal Co.*, 670 F.Supp. 45, 46–47 (D.D.C. 1987) (stating that 29 U.S.C. § 1392(c) can be read to allow a right of action against persons not otherwise falling within the definition of employer); *cf. In re Consolidated Litigation Concerning International Harvester's Disposition of Wisconsin Steel*, 681 F.Supp. 512, 519–520 (N.D.Ill.1988) (concluding that ERISA allowed liability for prior employers).

Individual Defendants argue that because of their shareholder status they were not liable in the first instance under 29 U.S.C.

---

**2.** There is some question as to how broadly the term "employer" can be read in 29 U.S.C. § 1381. Prior courts addressing the issue have held that the definition employer in subchapter I, 29 U.S.C. § 1002, does not apply to subchapter III. *See DeBreceni v. Graf Bros. Leasing, Inc.*, 828 F.2d 877, 879–80 (1st Cir.1987); *Connors v. P & M Coal Co.*, 801 F.2d 1373, 1377 (D.C.Cir.1986);

*Glover v. S.D.R. Cartage Co.*, 681 F.Supp. 1293, 1295–96 (N.D.Ill.1988). That is a question this Court leaves for another day in that the Court's decision in the present case holds non-employers liable and is thus not affected by the scope of liability created by varying definitions of the term "employer."

§ 1381, so they had no liability to evade or avoid through the sale of their shares and, consequently, they cannot be liable under 29 U.S.C. § 1392. However, the Court notes that Individual Defendants had two options: an asset sale which would have subject them to liability and a stock sale, the option they chose, which did not subject them to liability. A principal purpose of Individual Defendants choosing a stock sale over an asset sale could have been to evade or avoid liability. This choice subjects them to possible liability under 29 U.S.C. § 1392.

*IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049 (2d Cir.1993), supports the Court's conclusion that § 1381, § 1392 and § 1451 can all be read together to impose liability on non-employers. That case involved a factual scenario strikingly similar to this case. The plaintiff Fund was seeking recovery of debts and obligations owed to it by the defendant corporations and the individual defendant, Herrmann. *Id.* at 1053. Herrmann had been the sole shareholder of one of the defendant corporations, Manufacturing. *Id.* Manufacturing was obligated to, but failed to, make contributions to the Fund. *Id.* The second defendant corporation, Mowers, then purchased all of the assets of Manufacturing but did not assume any withdrawal liability of Manufacturing. *Id.* Prior to the transaction Herrmann paid himself a six figure bonus. *Id.* The transaction also involved paying Herrmann $50,000 of the $400,000 purchase price, as well as other payments over several years totaling $445,000. *Id.* This transaction rendered Manufacturing insolvent after which it ceased operations and made a complete withdrawal from the Fund. *Id.*

Applying § 1451 and § 1392 to the *Herrmann* case, the court stated that "the Fund, a plan participant, has been adversely affected by the acts of Manufacturing, Mowers and Herrmann.... Manufacturing, Mowers and Herrmann participated in a scheme, the principal purpose of which was to evade or avoid withdrawal liability by depriving Manufacturing of funds sufficient to meet its pension liability." *Id.* at 1056. The court went on to state:

> Reading sections 1451(a)(1) and 1392(c) together, if a pension fund ... is adversely affected by the acts of any party who has

attempted to "evade or avoid" liability under [ERISA], then [ERISA] shall be applied "without regard to such transaction." To calculate and collect liability, "without regard to such transaction," any assets that were transferred in order to "evade or avoid liability," *as well as the parties to whom they were improperly transferred,* must be within the reach of the statute. Further, to apply the [ERISA] "without regard to such transaction," the transferor entity must be deemed to be in possession of improperly transferred assets. Those assets must therefore be recoverable from the parties to whom they have been illegitimately transferred. Those parties thus become "part[ies] under this subtitle" within the meaning of § 1451(a)(1).

*Id.* (emphasis added).

This Court reaches the same result in the present case as the Second Circuit did in *Herrmann.* First, applying the *Herrmann* language to the present case, it follows that Individual Defendants are parties within the jurisdiction of the court because they are "any party" whose acts have adversely affected the fund. 29 U.S.C. § 1451. Second, liability can be imposed through 29 U.S.C. § 1392 because Individual Defendants allegedly "participated in a scheme, the principal purpose of which was to evade or avoid withdrawal liability by depriving [Illinois Range] of funds sufficient to meet its pension liability." *Herrmann,* 9 F.3d at 1056. Section 1392 dictates that the transaction is disregarded, which means that Illinois Range is deemed to be in possession of the assets transferred to Individual Defendants. To be able to do so, the Court has jurisdiction over both the assets that Individual Defendants received as a result of the sale of Illinois Range, that is, the "assets that were transferred in order to 'evade or avoid liability,'" and Individual Defendants, "parties to whom they were improperly transferred." *Herrmann,* 9 F.3d at 1056. This result is supported by prior Seventh Circuit cases which indicate a tendency to move in the same direction as the Second Circuit in *Herrmann.* In such prior decisions the Seventh Circuit focused on the purpose of withdrawal liability being to "protect the employers in the multiemployer plan from having to pay ... bene-

fits" owed to employees of withdrawing companies. *Santa Fe Pacific Corp. v. Central States, Southeast & Southwest Areas Pension Fund,* 22 F.3d 725, 727 (7th Cir.1994) (citing *Central States, Southeast & Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.,* 960 F.2d 1339, 1340 (7th Cir. 1992)). In order to effectuate that purpose, the Seventh Circuit imposed withdrawal liability when a transaction was structured as a stock sale in order to avoid withdrawal liability. *See Santa Fe Pacific,* 22 F.3d at 727–730 (reversing an arbitrator's decision, even though arbitrator found three times that avoidance of withdrawal liability was not a principal purpose of a sale).

Extending liability beyond employers is consistent with Congress's intent as demonstrated by the language Congress used in drafting the act. When Congress sought to limit liability to a narrow group of parties, it so indicated in its choice of terms. *See* 29 U.S.C. § 1381 (liability limited to "employer"). However, Congress choice of terms was not so narrow in the jurisdictional section, thus suggesting that Congress intended ERISA liability to be imposed on a broader group than just employers. *See* 29 U.S.C. § 1451 (liability may be imposed on "any party"). In sum, the Court holds that Individual Defendants are liable parties under ERISA and Plaintiff has stated a claim against Individual Defendants.[3]

### B. Plaintiff has Sufficiently Alleged in Count II that a Principal Purpose of Individual Defendants Entering the Transaction was Evading and Avoiding Withdrawal Liability

■ The elements of evasion and avoidance of withdrawal liability are laid out in *Santa Fe Pacific Corp. v. Central States, Southeast & Southwest Areas Pension Fund,* 22 F.3d 725 (7th Cir.1994). These are (1) the consummation of the transaction which allows the evasion and avoidance of withdrawal liability, and (2) the principal purpose of the transaction being the evasion and avoidance

of withdrawal liability. *Id.* at 727. *Santa Fe* emphasizes that the language in the statute is "a principal purpose" as opposed to "the principal purpose;" thus liability is not avoided if there is more than one principal purpose in the transaction. *Id.* at 727. Individual Defendants assert that Plaintiff has failed to sufficiently allege that a principal purpose of Individual Defendants' sale of their Illinois Range stock was to evade or avoid withdrawal liability. The Court disagrees.

■ *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049 (2d Cir.1993) examined what a Plaintiff needed to allege in order to state a claim for evading and avoiding withdrawal liability. The court reiterated the standard that a complaint must meet. "A thorough reading of the complaint [should put] the defendant on fair notice both as to the claims and the factual ground upon which the claims are based." *Id.* at 1058. However, *Herrmann* also dictates that Rule 9(b) applies. *Id.* Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The court also noted a limitation on Plaintiff's ability to access and include information at the pleading stage. "Moreover, the Fund was wholly dependent on the defendants' representations to make out its case of fraud. As the Fund was not privy to the negotiation of the asset sale, a more particularized account of the fraud claims could only be established through discovery." *Herrmann,* 9 F.3d at 1058. Thus, courts will not require plaintiffs to include in their pleadings information only available from defendants through discovery. In *Herrmann* the court concluded that the complaint stated a claim because it included allegations that the defendant knew about withdrawal liability, conspired to avoid withdrawal liability, and intended the transaction

---

**3.** Individual Defendants asserts that Counts III and IV should be dismissed for lack of jurisdiction if the federal law claim against Individual Defendants is dismissed. III and IV are state law claims for illegal corporate distributions and fraudulent conveyance against the Individual Defendants over which the Court had supplemental

jurisdiction pursuant to 28 U.S.C. § 1367. In that the Court is not dismissing the federal ERISA claim against the individual defendants, the Court still has supplemental jurisdiction over the state law claims against the individual defendants.

to be a means of avoiding withdrawal liability, along with documents that structured the transaction, and documents such as the Stock Purchase Agreement, the Asset Sale Agreement, and contracts all of which supported the allegations as to knowledge, conspiracy, and intent. *Id.*

■ Similar to *Herrmann,* Plaintiff alleged that Individual Defendants both knew of the withdrawal liability (Compl.¶ 43) and entered the transaction with the purpose of avoiding liability (Compl.¶ 45). However, Plaintiff included no exhibits such as contracts, the purchase agreement, or the sale agreement. Plaintiff, while making the necessary allegations, includes nothing additional to demonstrate its ability to back up those allegations with facts. However, the Court notes that Rule 9(b) requires only that a plaintiff plead intent and knowledge generally. Fed.R.Civ.P. 9(b). In addition, as noted in *Herrmann,* all that is required of a complaint is that it "put[ ] the defendant on fair notice both as to the claims and the factual ground upon which the claims are based." *Herrmann,* 9 F.3d at 1058. Plaintiff also points out that, similar to *Herrmann,* it included all information it has at this stage and further details would only be available in discovery.

In the present case, the Court concludes that Plaintiff's complaint put Individual Defendants on fair notice as to the claims and the factual basis for them. Plaintiff pled the elements of the claim, a transaction with the purpose being to avoid liability, and additionally pled both knowledge of the withdrawal liability and intent to avoid it, thus meeting Rule 9's liberal pleading requirements for knowledge and intent. Further, in that all of the information as to the transactions and the purpose behind them is in the hands of Individual Defendants, it cannot be expected that Plaintiff could provide any additional information in its complaint. Consequently, Plaintiff has sufficiently alleged the elements of an ERISA evading and avoiding liability claim.

## IV. THE MOTION FOR A MORE DEFINITE STATEMENT

■ In the alternative, Individual Defendants request a more definite statement. Fed.R.Civ.P. 12(e). Federal Rule of Civil Procedure 12(e) states that "[i]f a pleading to which a responsive pleading is permitted is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Courts have interpreted this standard in different ways. For instance, some courts view the rule as being clear on its face. "As for a more definite statement, it should be granted only when drafting a responsive pleading is impossible." *McDougall v. Donovan,* 552 F.Supp. 1206, 1208 (N.D.Ill.1982) *cited in Teradyne, Inc. v. Clear Communications Corp.,* 707 F.Supp. 353, 354 (N.D.Ill.1989); *see also United States v. Paschen Contractors, Inc.,* 664 F.Supp. 298, 303 (N.D.Ill.1987) (stating that courts grant 12(e) motions "only when the pleading is so unintelligible that the movant cannot draft a responsive pleading"). Other courts think a literal interpretation of the rule would in reality nullify it. "The rule that a more definite statement should not be granted unless response is impossible or unintelligible to the point of incomprehensibility is found in the cases, but, taken literally, cannot be the law. Almost any complaint can be answered." *Teradyne,* 707 F.Supp. at 354. Consequently, that court interpreted the rule to mean that a motion for a more definite statement should be granted is if the pleading is not "sufficiently specific to enable a judge to determine whether it is well founded in law and fact." *Id.* At its most stringent the standard can be construed to mean that "facts supporting the claim are required but that these facts need not be alleged in substantial detail." *Id.* at 353. Either way, it is well established that Rule 12(e) motions should not be treated as a substitute for discovery. *Paschen Contractors,* 664 F.Supp. at 303. The Court concludes that the present complaint meets even the most stringent standard.

■ The Complaint put Defendants on notice of what the claims are specifically in each Count. Count II specifies the sections of ERISA under which Plaintiff is proceeding. Compl. ¶¶ 43, 45. *Compare American Nurses' Assoc. v. Illinois,* 783 F.2d 716, 725 (7th Cir.1986) (noting that the statute possibly at issue was not cited in the Complaint).

The Count specifies the transaction from which Plaintiff believes liability stems. Compl. ¶¶ 41, 45. The Count also states that the Defendants acted with a specific purpose and knowledge. Compl. ¶¶ 41–43, 45. Count III also is sufficient for the same reasons. It alleges that the dividend distributions were illegal under 805 ILCS 5/9.10 and provides the date on which each of the illegal distributions was approved and the amount of each distribution. Compl. ¶¶ 52–67. Finally Plaintiff alleges in Count III that it was these distributions that rendered Illinois Range insolvent and caused the fund to suffer fiscal harm. Compl. ¶¶ 70–71. Count IV specifies that Plaintiff is proceeding under 740 ILCS 160/6. Compl. ¶ 79. It also alleges the transaction at issue, Compl. ¶ 75, and that Individual Defendants "consummated such transaction with the actual intent to hinder, delay, and/or defraud creditors of Illinois Range and its parent company," Compl. ¶ 76. It goes on to allege that as a result Illinois Range was rendered insolvent and was left with insufficient assets to meet the claims of its creditors. Compl. ¶ 77. Consequently, each Count not only specifies the legal theories under which the Plaintiff is proceeding but also makes some allegations regarding the facts supporting the claim. As a result, the Court concludes that requiring a more definite statement is not necessary and Defendants' motion is denied.

## V. CONCLUSION

ERISA was created to protect Funds from precisely what is alleged to have occurred in the present case. Congress drafted its language broadly to provide for liability under certain circumstances against "any party." Because the Court finds that Plaintiff's claims against Individual Defendants to be legally sufficient, the Court denies Edward Krakowiak, Edward Krysa and Donald Brokaw's motion to dismiss for failure to state a claim and motion for a more definite statement.